[Tennessee Coal, Iron & R. R. Co. v. Birmingham Southern Ry. Co.]

# Tennessee Coal, Iron & Railroad Co. v. Birmingham Southern Railway Co.

*Proceedings to Condemn Right of Way for Railroad Co.*

1. *Condemnation proceedings; appeal from probate court to Supreme Court.*—Under provision of the statute, (Code, § 1717), in an *ad quod damnum* proceeding, an appeal will lie direct to the Supreme Court from an order of the probate court, granting an application for the right to condemn a right of way across a specifically described tract of land, if taken within thirty days, and before an order of condemnation of the assessments of damages by the commissioners is entered under section 1720 of the Code.

2. *Same; railroad company having right conferred by special act to build branch road, under provisions of the statute.*—Where a railroad company has been chartered by a special act of the general assembly, and that act does not confer upon it power to extend its line beyond the termini named, or to build branch roads, said railroad company may acquire such power under and in accordance with provisions of sections 1172 and 1173 of the Code, and must acquire the power in that way, or by legislative amendment of its original charter.

3. *Same; same; when unnecessary to observe provisions of the statute.*—Where a railroad company is chartered by a special act of the Legislature, and that act authorizes the company to build a branch road and confers upon it the incidental rights, powers and immunities necessary to the exercise of the power to build said road, it becomes unnecessary, in the exercise of the rights and powers conferred, for such railroad to observe the provisions of section 1173 of the Code, as a condition precedent to condemn a right of way for a branch road to be built by it.

4. *Same; admissibility of evidence.*—In a proceeding by a railroad company to condemn a right of way for a branch road over a specifically described tract of land, it is not competent for the owner of the land across which the right of way is sought to be condemned, in contesting the granting of the petition, to show that the board of directors of the petitioner had not resolved to build the branch road, as required by the statute,

and that of consequence said road was without authority to build it, and without the right to condemn the right of way as prayed for; this being a matter of importance to the stockholders of the corporation alone and as to which strangers have no right to complain.

APPEAL from the Probate Court of Jefferson.

Heard before the Hon. J. P. STILES.

This was an *ad quod damnum* proceeding instituted in probate court of Jefferson county by a petition filed by the Birmingham Southern Railway Company, asking for the condemnation of a right of way over a certain tract of land, situate in said county, and owned by the T. C. I. & R. R. Co..

It was averred in the petition that the Birmingham Southern Railway Company was a body corporate, chartered and organized under an act of the General Assembly of Alabama, approved February 17th, 1899, and entitled: "An Act to incorporate Birmingham Southern R. R. Company," (Local Acts of 1898-9, p. 976).

It was further averred in the petition that, "Under and by virtue of the charter granted to the B. S. R. R. Co., said company has the right to condemn land for rights of way, for the purpose of carrying on its business as a railroad, and such purposes as are incident thereto, and as expressed in said Act."

After further averring that the Tennessee Coal, Iron and Railroad Company, a body corporate, was the owner of a certain specifically described tract of land in the county of Jefferson, it was then alleged that the petitioner desired to acquire, by condemnation, a right of way over said lands of the T. C. I. & R. R. Co. for the purpose of constructing thereon, a branch railroad, running from one of the roads of petitioner, with such side tracks, and other structures as may be necessary to maintain and operate said branch roads, as authorized by the act of the Legislature. The prayer of the petition was for an order of the condemnation as required by law.

To this petition the T. C. I. & R. R. Co. interposed a demurrer upon the following grounds: "1. Said application fails to show that the applicant has the authority

to condemn a right of way over the lands described therein." 2. "Said application does not aver that the construction of said railroad was authorized by a resolution of the board of directors of applicants." 3. "Said application does not aver that the construction of said railroad was authorized by resolution of the board of directors of applicant designating the point from and to which the said road is to be built. 4. Said application fails to aver that a resolution of the board of directors of applicant authorizing the construction of said railroad certified by the president and secretary of applicant under its corporate seal was filed and recorded in the office of the secretary of State prior to the filing of the application." This demurrer was overruled; thereupon, the Tennessee Coal, Iron & Railroad Company filed an answer in which (1.) it denied the allegations of the petition, and (2.) for further answer averred that the construction of railroad described in the application "were not authorized by resolution of applicant's board of directors, showing points to and from which the railroad was to be built, nor was copy of such resolution certified to by its president and secretary, under corporate seal of applicant filed and recorded in the office of the secretary of State of Alabama, prior to the filing of the application or thereafter, and that said railroad is a branch line or extension of applicant's main line." To the special plea and answer two interposed by the Tennessee Coal, Iron & Railroad Company, the petitioner demurred upon the ground that the right sought to be exercised by the petitioner in this proceeding is not governed by nor does it arise from the general statute requiring the things to be done as set out in the plea or answer, but that the petitioner's right sought to be interposed is governed by and arises from its own charter. This demurrer was sustained.

Upon the hearing of the cause the petitioner introduced in evidence a special act of the General Assembly of Alabama, incorporating the Birmingham South and found in the Local Acts of 1898-9, page 976. In section 5 of this act there are found the following pro-

section 5 of this act there is found the following provisions: "Said company is hereby further authorized and empowered to survey, locate and construct, alter, maintain and operate additional lines of railroad with one or more lines of tracks of rails, or extensions of the lines of railroad hereinbefore specified, with the further right to survey, locate and construct, alter, maintain and operate branches in any direction from any part or parts of said lines of railroad now or hereafter to be constructed, on or along such route or routes as may be deemed best by the said company, or found accessible, from the said city of Birmingham or other terminus, extending the same through the county of Jefferson, and the counties adjacent theerto, or into any other county of the State of Alabama, for the purpose of developing the mineral property along said lines of railroad or branches, and for transporting the products thereof to the market or to seaboard, and for such other purposes as may appear advantageous to said company; and on such railroad and branches said company is authorized to take and carry, for hire, persons and property, using such motive power, or such combination of different motive powers, as it may deem best; provided, that said company shall not be required to build any greater portion of such lines of road as above authorized than it may, from time to time, find to its best interest to do so."

The petitioner also introduced evidence showing that the Tennessee Coal, Iron & Railroad Company is a corporation doing business in the State of Alabama and having its principal place of business in Birmingham and that it was the owner of a tract of land across which the right of way was asked to be established. The construction of the proposed line of railroad was directed and authorized on the part of the petitioner by its president and general manager, and that the proposed road was a branch line or extension from a line owned by the petitioner and already in operation.

The respondent, the Tennessee Coal, Iron & Railroad Company, offered to prove that no resolution of the

board of directors of the petitioner had been adopted prior to the filing of the petition or thereafter, authorizing the construction of the railroad for which the right of way was sought to be condemned in the petition, and designating the point to and from which it was to be constructed and that no verified copy of such resolution had been filed and recorded with the secretary of State. Upon the petitioner objecting to the introduction of this evidence, on the ground that it was irrelevant and immaterial, the respondent's counsel stated that it was the purpose of such evidence to show that the construction of said railroad had not been authorized as required by section 1173 of the Code of 1896. The court sustained the objection, refusing to allow the evidence introduced; and to this ruling the respondent duly excepted.

Upon the submission of the cause the court rendered a decree granting the application of the petition and ordered the condemnation of the right of way described in the petition; appointing commissioners, etc. To the rendition of this decree respondent duly excepted. This order granting the prayer of the petitioner was rendered on September 5, 1900, and the same day the Tennessee Coal, Iron & Railroad Company, after giving security for costs, obtained an appeal to the Supreme Court from a decree of the probate court, granting relief prayed for in the petition.

In this court the motion was made to dismiss the appeal, upon the ground that no right of appeal lies from the preliminary order of the probate court granting petition, and that in so far as section 1717 of the Code attempts to give such right of appeal, it is unconstitutional and void.

WALKER PERCY and W. I. GRUBB, for appellant.—A railroad corporation organized by a special act of the legislature cannot construct a branch line and extension without first complying with section 1173 of the Code of 1896.—*Arrington v. Savannah & Western R. R. Co.,* 95 Ala. 434.

SMITH & WEATHERLY, contra.—Appeal in this case should be dismissed. It has been repeatedly held by this court that an appeal does not lie from the probate court to the Supreme Court, but if an appeal is taken on an order from the probate court, in condemnation proceedings, it must be taken to the circuit court, or a court of like jurisdiction, and that an appeal can then be taken from an order of such court to the Supreme Court.—Postal Tel. Co. v. A. G. S. R. R. Co., 92 Ala. 331; M. & C. R. R. Co. v. Hopkins, 108 Ala. 159; Odum v. R. & J. Company, 94 Ala. 489; Ala. Midland R. R. Co. v. Newton, 94 Ala. 443; L. & N. R. R. Co. v. Peoples' St. Ry. Co., 101 Ala. 331; Woodward Iron Co. v. Cabaniss, 87 Ala. 238; Montgomery R. Co. v. Sayre, 72 Ala. 443.

The petitioner in this case was incorporated by special act of the General Assembly, that special act granting the charter conferred the right and power upon the petitioner to build a branch road, and gave the additional right to condemn a right of way for branch road built by it.

In view of the powers thus granted by the special act to petitioner, it was not necessary for it to conform to requirements of 1173 before it had the right to exercise the power so conferred. Disposition is supported by case of Arrington v. Savannah & Western R. R. Co., 95 Ala. 434.

McCLELLAN, C. J.—The appeal in this case having been taken from the order granting the application for condemnation made under section 1717 of the Code, within thirty days thereafter and before the final order of condemnation on the report of the commissioners provided for by section 1720 of the Code, brings such preliminary order properly into and before this court, and the motion to dismiss it must be denied.—Birmingham Railway & Electric Co. v. Birmingham Traction Co. ante. p. 110; Southern Railway Co. v. Birmingham, Selma & New Orleans Railway Co., (Ms.)

The genesis of section 1172 of the Code of 1896 is this: On March 8, 1876, an act "To authorize the incorpora-

tion of railroad companies in this State" was enacted. It provided for filing declaration of incorporation in the office of secretary of state and all necessary proceedings thereunder to the issuance of a certificate of incorporation by the secretary of state, and was and, with amendments, continues to this day to be what is known as the "general law for the incorporation of railroad companies." Section 16 of that act is as follows: "That every railroad company incorporated under the provisions of this act shall have its domicile or principal place of business in this State, but any railroad incorporated and domiciled as above, may own and operate a railroad connecting with their [its] own outside of this State; and all meetings of directors and of stockholders of companies, organized under this act, shall be held in this State at the place where its principal office may be established. Mortgagees or others who may be or become purchasers of any railroad in this State under any judicial or other sale, may reorganize the property so purchased in the manner provided in this act for the incorporation of railroad companies." This whole statute was carried into the Code of 1876; and section 16, except its last sentence was embodied in section 1843 of that Code, that section being a copy of section 16 of the act down to the words "mortgagees or others," etc. This clause of section 16 is embodied in section 1844 of the Code of 1876 in the words of the act, along with a provision taken from the act of March 20, 1875, to the effect that within sixty days after incorporation by such purchasers such corporation should file a certificate thereof in the office of the secretary of state, and defining the word purchasers. On December 12, 1882, an independent act was passed "To authorize railroad companies organized under the general incorporation laws of this State to extend their lines and build branch roads." The first section of this act provides: "That any railroad company which has been heretofore, and may be hereafter, incorporated and organized under the general incorporation laws of this State, may extend its railroad from any point named in its charter, and may build branch roads from

any point or points on its line. Before making such extension, or building any such branch road, such railroad company shall, by a resolution of a majority of its board of directors, to be entered on the records of its proceedings, designate the point from which and to which such extension is to be made or such branch road is to be built." Section 2 of the act requires the certification of a copy of said resolution to the secretary of state and its filing and recordation in his office, and provides that "thereafter such company shall have the same right and power to make such extension and build such branch road as if it had been authorized in its original charter," etc., etc. Section 3 confers upon such companies "for the purpose of making such extension and building such branch road," all the rights, powers, etc. "which are now or may hereafter, by the laws of this State, be granted to, and vested in, railroad companies incorporated under the general incorporation laws of the State." Acts, 1882-83, p. 21. The provisions of this act are combined with the provisions of sections 1843, 1844 and 1845 of the Code of 1876, in the codification of 1886, and all are embodied in sections 1587 and 1588 of the Code of the latter year; but by the terms of said last named codification the operation of the provision as to the extensions of line and building branch roads is not expressly confined, as in the Code of 1876 and the act of 1882, to corporations organized under the general incorporation laws of the State, but, unless limited by the connection in which these sections are placed in the Code of 1886, they there deal with any "corporation, now existing or which may hereafter be organized for the building, constructing and operating a railroad." Section 1588 of the Code of 1886 was, however, amended by the act of February 28, 1889, which act reiterates the provision of the act of 1882 that after the adoption and filing and recordation in the office of the secretary of state of the resolution of the directors for an extension of line or the building of a branch road, the corporation for that purpose "shall have all the rights, powers and immunities which are now, or may hereafter by the laws of this State, be granted to and invested in railroad

534          SUPREME COURT          [Nov. Term,

[Tennessee Coal, Iron & R. R. Co. v. Birmingham Southern Ry. Co.]

corporations under and by virtue of the general incorporation laws of the State."—Acts, 1888-89, pp. 75-6. And this provision in the words quoted is now embodied in section 1173 of the present Code; but section 1172 of the Code of 1896 granting power and authority to extend lines and to build branch roads, like its progenitor, section 1587 of the Code of 1886, is broad enough in its terms to cover corporations organized under special acts as well as those organized under the general incorporation laws. Its language is: "Any corporation now existing, or which may be hereafter organized for the building, constructing and operating a railroad, has authority, for the purpose of extending its line, or forming a connection, to acquire, hold and operate a railroad without this State; or within the State may extend its road, or may build, construct and operate branch roads from any point or points on its line." And we see no reason for not giving full operation to this section and to section 1173 according to their own expressed terms *except in cases where their provisions are controlled or their operation is excluded by special enactments.* It is true that these sections are embodied in a chapter of the Code which contains the general law for the incorporation of railroad companies, that this chapter in the main is drawn from and intended to be a codification of the act of 1876 which dealt only with corporatons organized under it in the office of the secretary of state; but this chapter now contains many provisions that have no reference to corporations organized under that general law, and others which obviously and necessarily apply to both classes of corporations, those organized under the general law and those chartered by special act. It is also true that the provisions of sections 1172 and 1173 as to the granting of power to build branch roads are taken from the act of 1882 through intervening codifications, and that by the express terms of that original act as also by its terms as first codified, its operation was expressly limited to corporations organized under the general incorporation laws of the State; but it was, of course, competent for the legislature in the framing and adoption of a new Code to eli-

minate that limitation.    And that it is entirely omit-
ted from the last codification implies, of course, a legis-
lative purpose that there should be the change in the
law which the omission imported.    And there is as
much reason for giving all the terms of both sections
operation in respect of a railroad corporation chartered
by special act *which does not confer power to extend
the main line or to build branch roads* as to accord it
effect as to a corporation organized under the general
incorporation laws of the State.    Even the last clause
of section 1173 may well have a field of operation in re-
spect of a specially chartered corporation not having
power to build extensions or branch roads, since the
rights, powers and immunities necessary to extending
the line or to building branch roads could not be de-
rived from the special act which conferred no power to
extend the line or to build branch roads, and hence
could not be looked to for such powers, rights and im-
munities when the specially chartered company had ac-
quired under this statute the naked right to extend its
line or to build a branch road.    At least it may be said
that there is the same necessity for the operation of the
last clause of said section in respect of a corporation
whose special charter did not confer the power of exten-
sion, and which had acquired that power under these
sections, as in respect of a corporation organized under
the general law which had acquired authority to build
extensions and branch roads under said sections.    So
that our opinion is that where a railroad company has
been chartered by a special act of the legislature, and
that act does not confer power to extend its lines beyond
termini named in it, or to build branch roads, it may
acquire such power under and in accordance with the
provisions of said sections 1172 and 1173 of the Code,
and must acquire it in that way or by legislative amend-
ation of its original charter.

But it seems entirely clear to us that as the general
assembly may by special act charter a railroad corpora-
tion and confer upon it in express terms every power,
right and immunity that such corporation may have,
hold or enjoy under the constitution, it of course may

authorize such corporation to build branch roads and confer upon it every power and right incident and necessary to the exercise of the authority to build such roads, and this it may do directly, absolutely and unconditionally, leaving no necessity, occasion or room for invoking the provisions of section 1173 to that end, or for complying in any way with those provisions to accomplish it. And that is precisely what the legislature has done in respect of the Birmingham Southern Railroad Company, the applicant for condemnation below and appellee here, by the special act of February 17, 1899, introduced in evidence on the trial below. That act authorizes the corporation to build the branch road the right of way for which over respondent's lands is sought to be condemned in this proceeding, and it confers all the incidental rights, powers and immunities necessary to the exercise of the power to build said road; and it thereby takes the case wholly out of the operation of sections 1172 and 1173 of the Code. This interpretation is strengthened by the terms of the act of December 12, 1882, which, as we have seen, is the original source of the sections of the present Code bearing on this matter. It is there provided that after the provisions of the act have have been complied with the "company shall have the same right and power to make such extension and build such branch road *as if it had been authorized in its original charter.*" (the italics are ours) thus demonstrating that the statute was only intended to supply power where there was an absence of it in the original charter, and that the power intended to be supplied by the statute was only the same as a company with such authorization in its charter would have without a resort to the statute. Acts 1882-83, pp. 21-2. The case of *Arrington v. Savannah & Western Railroad Co.,* 95 Ala. 434, had to do with the right of a corporation organized under the general law to build a branch or spur track. The general law did not authorize the building of such track. The corporation had no special statutory power. Of course it could acquire this power only under and in compliance with sections 1172 and 1173 of the Code. And that was all that was held in that

[Mouton v. Louisville & Nashville Railroad Co.]

case. It was not there held or intimated nor intended to be that a corporation having special statutory power to do this thing yet could not do it until it acquired the same power in the manner pointed out in the Code. The case is not authority here. It arose under the Code; this one does not.

The further position taken for appellant that leaving the statute out of view, the respondent had the right to show on the trial below that the directors of the Birmingham Southern Railroad Company had not resolved to build this branch road, and that of consequence the company was without authority to build it and without right to condemn a right of way over respondent's land, is untenable. That is a matter of importance to the members—stockholders—of the corporation, but of no legitimate concern to strangers.

The rulings of the probate court were in accordance with the foregoing views of the law, and its judgment must be

Affirmed.