MARTIN W. WAGNER et al., Appellants, *v.* LEWIS E. MALLORY et al., Respondents.

1. OIL LEASE — WHEN TITLE TO OIL VESTS. A lease granting the exclusive right to mine and excavate oil for a specified period, one-eighth of the oil pumped and raised from the premises to be delivered to the lessor, vests no title to the oil in the lessee until it has been taken from the ground and reduced to possession.

2. LEASEHOLD INTEREST PERSONAL PROPERTY NOT EMBRACED IN DEED OF INTEREST IN REAL ESTATE. The right to produce the oil, both by authority and express legislative enactment (L. 1883, ch. 372), is personal property, and does not pass under a deed from the lessee's executors and devisees purporting to convey all the lands owned by them "or in which they have an interest," since the deed announces an intent to convey an interest in real estate, not in personal property.

*Wagner* v. *Mallory,* 41 App. Div. 126, affirmed.

(Submitted January 10, 1902; decided January 28, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 3, 1899, affirming a judgment in favor of defendants entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*A. Wentworth* for appellants. The referee erred in his conclusion of law that the plaintiffs did not, by the deed to them from the heirs, devisees and executors of Job Moses, deceased, acquire any title to or interest in the oil to be found in the lands described in the complaint. (*Peck* v. *Mallams,* 10 N. Y. 532; *Martin* v. *Olcott,* 101 N. Y. 152; *Maxon* v. *Maxon,* 16 N. Y. S. R. 74; *Jackson* v. *De Lancey,* 11 Johns.

365; *Moore* v. *Jackson,* 4 Wend. 58; *Hathaway* v. *Power*, 6 Hill, 453; *Jackson* v. *Delaney*, 4 Cow. 427; *Nye* v. *Hoyle*, 120 N. Y. 195; *Ormsby* v. *Jones,* 73 N. Y. 621.) The referee erred in finding that the plaintiffs did not by the deed to them from the heirs, devisees and executors of Job Moses, deceased, acquire any right to go upon the lands described in the complaint and remove the oil therefrom. (*Mumford* v. *Whitney*, 15 Wend. 381; 13 Am. & Eng. Ency. of Law, 539; *G. L. & P. R. R. Co.* v. *N. Y. & G. L. R. R. Co.*, 134 N. Y. 436; *Thomas* v. *Sorrell*, Vaughn, 351; *Brown* v. *Beecher,* 120 Penn. St. 590; *French* v. *Carhart*, 1 N. Y. 96; *Corning* v. *T. I. Co.*, 40 N. Y. 209; *Ives* v. *Van Ayken,* 34 Barb. 566; *Clark* v. *Cottrell*, 42 N. Y. 527; *Marvin* v. *B. I. Co.*, 55 N. Y. 548; *G. M. E. Church* v. *Dobbins*, 153 Penn. St. 294.) The referee erred in his conclusion of law that the plaintiffs have no interest or title to the oil in said lands, or right to take the same from said lands. (*Funk* v. *Haldeman*, 53 Penn. St. 229; *Dake* v. *Johnston*, 55 Penn. St. 164; *U. P. Co.* v. *B. P. Co.*, 72 Penn. St. 173; *Thompson's Appeal*, 101 Penn. St. 225; *Barnhart* v. *Lockwood*, 152 Penn. St. 62; *V. Oil Co.* v. *Fretts*, 152 Penn. St. 451; *Shepherd* v. *McC. Oil Co.*, 38 Hun, 37.) The referee and the Appellate Division erred in maintaining that these rights would not pass by deed. (*Nellis* v. *Munson*, 108 N. Y. 453; *Noyes* v. *Wyckoff*, 30 Hun, 466; Washb. on Ease. 3, 6, 7, 14; *Huntington* v. *Asher*, 96 N. Y. 604; *Post* v. *Pearsall*, 22 Wend. 425; *Snell* v. *Leavitt*, 110 N. Y. 595; *Barnhart* v. *Lockwood*, 152 Penn. St. 82.)

*F. B. Church* for respondents. If the construction asked for by the appellants be put upon the language of the Robinson deed and it be held that the lease created an "interest" in the lands and premises in question, such interest could not be conveyed to plaintiffs by the general language employed in the conveyance to them. (*Thayer* v. *Finton*, 108 N. Y. 394.) If it be held that the deed from Moses to Robinson was sufficient to pass the title to interests in lands and premises not mentioned in the description, and that the general clause

extended the grant to such interests, the grantors had no such interest in the premises in question to convey. (*Craig* v. *Wells*, 11 N. Y. 320; *Blackman* v. *Striker*, 142 N. Y. 561; *Mount* v. *Hambley*, 33 App. Div. 106.) Plaintiffs cannot establish title to the oil by virtue of the lease. That instrument does not create an interest in land or premises; nor would the rights or interests granted to the parties of the second part, whatever their character, pass by the terms of the deed to the plaintiffs. (*Willetts* v. *Brown*, 42 Hun, 140; *Broman* v. *Young*, 35 Hun, 180; *Shepherd* v. *McC. Oil Co.*, 38 Hun, 37; *Eaton* v. *A. G. Co.*, 122 N. Y. 416; *Cranford* v. *Ritchey*, 43 W. Va. 252; *V. Oil Co.*, v. *Freets*, 152 Penn. St. 451; *Thompson's Appeal*, 101 Penn. St. 225; *Barnhart* v. *Lockwood*, 152 Penn. St. 82; *Herrington* v. *Wood*, 6 Ohio C. C. Rep. 326.)

HAIGHT, J. This action was brought to enjoin the defendants from appropriating the oil produced upon the premises described in the complaint, and for an accounting, etc.

There is no controversy with reference to the facts. The history of the title to the lands in question is of considerable length, and is fully set forth in the findings of the referee. We shall here state only so much of it as presents the question to be determined.

In the year 1887 one Job Moses died, leaving a last will and testament, which was duly admitted to probate in Cattaraugus county. At the time of his death he was the owner of an oil lease, executed on the second day of October, 1877, upon the lands described in the complaint, for a term of forty years. At this time one John S. Robinson was the owner of the lands, subject, however, to the rights reserved by this lease. The defendants Mallory, Rathbone and Tait have succeeded to the title of Robinson, and the plaintiffs claim to be the owners of the lease under a deed executed by the executors and devisees under the will of Job Moses. That deed bears date the second day of October, 1888, and is in the usual form, specifically describing twenty parcels of land

in the town of Carrolton, Cattaraugus county, and five parcels in the town of Red House, in that county, none of which includes the lands owned by Robinson or these defendants. It, however, concludes with the following: "It is the intent hereof to convey to the parties of the second part all the lands and premises owned by the parties of the first part, or in which they have an interest, lying or being in the said town of Carrolton and the said town of Red House, whether the same are hereinbefore particularly described or not." The lands of Robinson, upon which the lease was outstanding, were located in the town of Carrolton and, therefore, it is contended on behalf of the plaintiffs that the leasehold interest owned by the testator at the time of his death passed to them under this provision of the deed. Subsequently, the defendants Mallory, Rathbone and Tait caused an oil well to be drilled upon the premises, which resulted in the discovery of oil, which they ever since have been producing therefrom and appropriating to their own use.

In order to determine the true intent and meaning of the provision in the deed to the plaintiffs alluded to, it becomes important to examine more fully the provisions of the lease. By its terms the party of the first part grants, demises and lets to the parties of the second part, their executors, administrators and assigns, for the sole and only purpose of mining and excavating for oil, giving to them the exclusive right and privilege of so mining and excavating oil for a period of forty years, the parties of the second part covenanting to deliver to the party of the first part one-eighth part of the oil pumped and raised from the premises. It will be observed that there is, by the terms of the lease, no grant of the oil as it exists in the earth, so that there is no passing of the title to the oil as it exists in its natural state, but that the right is limited to the mining and excavating, or the pumping and raising of the oil from the premises. It is a right to produce or extract the oil from the earth, yielding one-eighth thereof to the landlord. What was this right? Was it real estate or personal property? It is said that leases of this character are incorporeal heredita-

ments and that petroleum oil is a mineral and is a part of the realty like coal, iron and copper. It is true it is a mineral substance, but it widely differs from the minerals mentioned, which are solids, having a fixed location in the earth like the rock itself. Petroleum oil is a fluid found in the porous sandrock of the earth. In some instances it, doubtless, exists in pools, but where are the pools located? They may be under the lands in which the well is drilled; they may be in the abutting or remote lands and may drain into the wells through seams or crevices in the rock, and then be extracted from the earth and reduced to possession by the operator. In this respect oil resembles water as it exists in the earth, especially salt and mineral waters, which have a market value, and is largely governed by the same rule of law. It, consequently, was held at a very early day in the history of the petroleum oil production that a man could not be restrained by his abutting neighbor from boring for oil upon his own premises, although he located his well within a few feet of the line and would necessarily drain the oil from his neighbor's land, if any existed therein. We, consequently, are of the opinion that no title to the oil vested in the lessee until it had been taken from the ground and reduced to possession. (*Duffield* v. *Hue*, 136 Pa. St. 602, 607; *Westmoreland, etc., Gas Co.* v. *De Witt*, 130 id. 235, 249; *Brown* v. *Vandergrift*, 80 id. 142; *Union Petroleum Co.* v. *Bliven Pet. Co.*, 72 id. 173; *Funk* v. *Haldeman*, 53 id. 229; *Dark* v. *Johnston*, 55 id. 164, 168; *Thompson's Appeal*, 101 id. 225, 232; *Shepherd* v. *McCalmont Oil Co.*, 38 Hun, 37; *Goodale* v. *Tuttle*, 29 N. Y. 459, 466.)

Again, by chapter 372 of the Laws of 1883, the legislature enacted that " all oil wells and all fixtures connected therewith, situate on lands leased for oil purposes and oil interests, and rights held under and by virtue of any lease or contract or other right or license to operate for or produce petroleum oil, shall be deemed personal property for all purposes except taxation, but nothing herein contained shall affect the laws now in force relating to taxation." Here we have an express provis-

ion of the statute making oil wells, fixtures, and oil interests located on leased lands personal property. It is quite true that the legislature had no power to destroy vested interests in real property, and that this act was passed after the execution of the lease in question; but the legislature had the power to determine and define the character of property and specify whether it should be regarded in the future as real or personal. This statute was in force when Moses died, and when his executors and devisees conveyed to the plaintiffs. The act then defined the interests of Moses, or those of his legatees and devisees, under the lease as personal property, and they must be presumed to have executed the deed having in mind this statute.

The provisions of the deed under which it is contended that the leasehold interests outstanding upon the defendants' premises were conveyed to the plaintiffs, announce an intent to convey to them all the lands and premises owned by the parties of the first part or in which they have an interest; in other words, the intent was to convey an interest in real estate, and not in personal property.

We think the provision does not cover the interest in the lease, and, therefore, that the judgment should be affirmed, with costs.

PARKER, Ch. J., GRAY, O'BRIEN, BARTLETT, CULLEN and WERNER, JJ., concur.

Judgment affirmed. _____