### STEBBINS v. MYERS et al.

(Supreme Court, Equity Term, Monroe County.   September 27, 1913.)

1. CONTRACTS (§ 164*)—CONSTRUCTION—PREVIOUS CONTRACT.

Where an option contract for the taking of gravel from plaintiff's land expressly superseded and annulled all previous agreements, the previous agreements could not be read with the present one for the purpose of de-termining its effect.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 746–748; Dec. Dig. § 164.*]

2. CONTRACTS (§ 217*)—CONSTRUCTION—OPTION CONTRACT.

Where a written contract recited that plaintiff granted to defendants an option to purchase sand or gravel from her land at the rate of 3 cents per cubic yard, defendants agreeing to take not less than $1,000 worth at that rate, and authorized defendants to grade for roads and tracks, and to place and remove tracks and any equipment at or before the termination of the agreement, defendants did not take a vested inter-est or a perpetual right to remove the sand and gravel from plaintiff's land, but had only the right to remove sand and gravel to the value of $1,000, whereupon plaintiff might revoke the license.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1005–1009; Dec. Dig. § 217.*]

3. CONTRACTS (§ 217*)—REVOCATION—CONDITIONS PRECEDENT.

Where plaintiff entered into a contract giving defendants an option to take sand and gravel from her land at a fixed rate, but not less than $1,000 worth, the contract giving defendants permission to lay and remove tracks, plaintiff's right to revoke the license after the taking of $1,000 worth was not conditioned upon her making defendants good for expendi-tures in laying tracks and placing equipment upon the land.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1005–1009; Dec. Dig. § 217.*]

Action by Sarah A. Stebbins against John H. Myers and another. Judgment for plaintiff.

John Van Voorhis' Sons, of Rochester, for plaintiff.
Willis K. Gillette, of Rochester, for defendants.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CLARK, J.  The parties to this action on the 15th day of December, 1911, entered into a written agreement whereby the plaintiff, in consideration of $1 paid by defendants, granted to them—

"an option to purchase sand, or gravel, or both, from the lands owned by first party [plaintiff] at the rate of 3 cents per cubic yard, and second parties [defendants] agreed to take not less than $1,000 worth of sand, or gravel, or both, at the aforesaid rate."

It was conceded on the trial that second parties had taken sand and gravel under said agreement from first party's land to an amount exceeding $1,000 in value, and that before the commencement of this action plaintiff had notified defendants to cease taking sand and gravel from her premises, thereby revoking, as claimed by plaintiff, the license above referred to.

[1] It appears that on December 5, 1910, the same parties had entered into an agreement of a similar nature, but which permitted defendants to take gravel only from plaintiff's land, and the learned counsel for defendants urges that these two agreements must be read together.  I cannot agree with him in that contention, for in the last agreement, the one dated December 15, 1911, this language was used:

"It is understood and agreed that this agreement or option supersedes and annuls agreement entered into December 5, 1910, by the parties hereto, for the same land and privileges."

It will thus be seen that by the very language of the last agreement between the parties it was plainly stated that that agreement annulled the prior one, so the rights of the parties to this controversy must be determined on the theory that the agreement of December 15, 1911, is the only existing one between them.

[2] It is the contention of plaintiff that this agreement was a mere license, revocable at her will;  and defendants contend that they have a vested interest in and legal right to remove the sand and gravel from plaintiff's farm, which cannot be canceled or annulled by plaintiff. The language of the instrument itself shows that it was the intention of the parties that at some time there should be a termination of the agreement;  for it says, among other things, that defendants shall have the right—

"to grade for roads and tracks, and to place and remove said tracks and any equipment at or before the termination of this agreement."

It will be observed that by this writing plaintiff did not grant to defendants the sand and gravel on her farm, but merely granted to them an option to purchase sand, or gravel, or both, at a certain rate per cubic yard, and they agreed to take not less than $1,000 worth of such articles at said rate.  At most defendants were granted the absolute right to take $1,000 worth of sand and gravel from plaintiff's land, and they agreed to take that much, and plaintiff was bound to let them have it, but after that either party could terminate the agreement, and it is conceded that plaintiff did not terminate it until after defendants had removed more than the quantity of sand they were bound to take and she was bound to let them take.  This was not

a grant of all the sand and gravel defendants might desire to take from plaintiff's land, but an option to remove at least $1,000 worth, and when they had removed that much, which defendants concededly did in this case, plaintiff had a right to terminate the agreement, for it was a mere license to remove these materials, and could not be construed as granting to defendants a vested interest in her lands. Wagner v. Mallory, 169 N. Y. 501, 62 N. E. 584.

If defendant's theory was to be adopted, it would mean that they could dig all over plaintiff's farm, if they chose, leaving unsightly holes and piles of sand and gravel; and manifestly plaintiff never intended to give to them any such rights or privileges. She undoubtedly granted to defendants the option to purchase at least $1,000 worth of sand and gravel, and to go on her premises and remove it; but, when they had removed material of that value, then she had a right to immediately terminate the license. McIntyre v. Barnard, 1 Sandf. Ch. 52; Shepard v. McCalmont Oil Co., 38 Hun, 37; Cahoon v. Bayaud, 123 N. Y. 298, 25 N. E. 376; Wagner v. Mallory, supra; Genet v. D. & H. Canal Co., 136 N. Y. 593, 32 N. E. 1078, 19 L. R. A. 127; Cronkhite v. Cronkhite, 94 N. Y. 323. The last case cited, Cronkhite v. Cronkhite, was based on an oral agreement; but there was a valuable consideration, and it had been in operation and acted upon by the parties for more than 40 years, but it was held to be merely a license, revocable at the pleasure of the licensor.

[3] It is urged by the learned counsel for defendants that in any event plaintiff could not revoke this agreement, if it was held to be a license, until she had made defendants good for very considerable expenditures it was claimed they had been subjected to in making preparations to remove sand and gravel from plaintiff's property. It must not be forgotten, however, that by the terms of the contract itself they agreed to take at least $1,000 worth of these materials, and, of course, it was necessary for them to place upon the property all the appliances which were necessary to accomplish that result, and it does not appear that they incurred expenditures, excepting such as it was necessary for them to incur to remove the quantity of sand and gravel they were obliged to take. It was the intention of the parties that they should have the right to go on plaintiff's land and take at least $1,000 worth of these materials at an agreed price, and after they had received $1,000 worth plaintiff had the undoubted right to revoke the license. This she undertook to do; but defendants insist that they have a vested interest in all the sand and gravel on her farm.

I do not think the instrument under consideration would warrant any such construction, and defendants not having expended moneys for any permanent improvements, but simply to place upon the lands movable personal property, such as steam shovels, temporary tracks, etc., to enable them to remove the $1,000 worth of materials they bound themselves to take, are hardly in position to insist that plaintiff make them good for such expenditures.

If I am correct in these conclusions, it follows that plaintiff is entitled to the relief demanded in the complaint; and judgment is directed accordingly, with costs to be taxed.

Findings may be submitted.