UTAH COPPER CO v. MONTANA-BINGHAM CONSOL. MINING CO. et al.

No. 4372.   Decided Oct. 11, 1926.   Rehearing Denied April 21, 1927.
(255 P. 672.)

*Dey, Hoppaugh & Mark* and *Pierce, Critchlow & Marr,* all of Salt Lake City, for appellants.

426

*Dickson, Ellis, Parsons & Adamson,* of Salt Lake City, for respondent.

STRAUP, J.

The Utah Copper Company, the respondent here and plaintiff below, and the Montana-Bingham Consolidated Mining Company, the principal defendant below and appellant here, are each engaged in mining in the West Mountain Mining District, near Bingham, in Salt Lake county. The Montana-Bingham Consolidated Mining Company, being the chief defendant and appellant, will thus be referred to as the defendant and appellant. In 1907, the plaintiff, who is and for many years has been engaged in mining copper in the district, obtained from the defendant and its predecessor, and from other mining claimants, a perpetual grant or easement to dump ore, rock, and earth, and other material, on the surface of a portion of the mining claims of the defendant and on claims of others located in the district, at or near Bingham, and from thence on, and until the commencement of this action, the plaintiff, through its mining operations, conveyed and deposited on such claims a large quantity of ore, rock, earth, overburden, and other material, carrying a low grade of copper and other minerals. Such material was deposited in a gulch. The dump or deposit covered a surface area of about 25 or 30 acres but only about 5 or 6 acres of which are on the mining claims of the defendant. At the time of the trial there was deposited on the dump about 6,700,000 tons of material which was estimated to contain about 100,000,000 pounds of copper. The grant from the defendant to the plaintiff gave it a perpetual right or easement to dump the material on the surface of a portion of the several claims of the defendant, fully described, and a perpetual right at any time to remove the deposits or any part thereof, the defendant reserving unto itself all ores, and the right to mine and remove them, underneath the surface of the mining claims so granted and conveyed to the plaintiff, and to prospect, develop, and mine underneath the sur-

face so granted to plaintiff. In time as the waters from rain and snow fell on the dump and seeped through it they collected copper in solution running from 10 to 14 pounds per thousand gallons. For several years prior to the commencement of the action, the defendant, by excavations and tunneling on its claims below the dump and near it but on its own claim or claims, collected some of such waters and by pipe line conveyed them to tanks where the copper in solution was precipitated. The annual net profits derived by the defendant from such source was from $12,000 to $14,000. The plaintiff thus commenced this action to condemn a right of way and easements over the defendant's claims, the surface of which had not theretofore been conveyed to the plaintiff, to excavate a tunnel and lay a pipe line on the surface of the defendant's claim or claims to collect and divert the waters in the dump so carrying copper and other minerals in solution and to convey them to tanks of its own where the copper and other minerals may be precipitated and saved for its own use and benefit. The court below granted the plaintiff a judgment of condemnation for such purpose and assessed the damages the amount of which was stipulated at $500. The defendant appeals.

Our statute (Comp. Laws Utah 1917 § 7330) provides that the right of eminent domain may be exercised, among other things, in behalf of reservoirs, dams, water gates, canals, ditches, flumes, tunnels, aqueducts, and pipes for supplying persons, mines, mills, smelters, or other works for the reduction of ores with water for domestic or other uses; tunnels, ditches, flumes, pipes, and dumping places to facilitate the milling, smelting, or other reduction of ores, or the working of mines, quarries, coal mines, or mineral deposits; outlets for the deposit or conduct of tailings, refuse, or water from mills, smelters, or other works for the reduction of ores, or from mines, quarries, coal mines, or mineral deposits; occupancy in common by the owners or possessors of different mines, quarries, coal mines, mineral deposits, mills, smelters, or other places for the reduction of ores, or

any place for the flow, deposit, or conduct of tailings or refuse matter; and for sites for mills, smelters, or other works for the reduction of ores and necessary to the successful operation thereof.

It is not contended that the plaintiff under the statute, was not entitled to exercise the right of eminent domain, provided the waters carrying copper in solution and by the plaintiff sought to be collected and diverted belonged to it. Nor is it seriously contended that the condemnation and occupancy decreed will interfere with mining operations or development, either present or in the future, of any of the defendant's claims. At the trial it was faintly asserted that the earth and rock resulting from the excavation of the plaintiff's proposed tunnel and thrown on a surface or area of about 25 by 150 feet on one of the defendant's claims which was also sought to be condemned for such purpose interfered with dumping facilities of the defendant, but on the record there is no substance to the contention, nor is it here urged to any extent. The chief contentions of appellant are that under the grant of the defendant to the plaintiff the latter had the right only to deposit and remove the ore, overburden, and other material, deposited on the surface of the defendant's claim or claims but had no right to remove waters from the dump, or to avail itself of waters carrying copper or other minerals in solution, that the defendant became the owner of the waters from the time they fell on the dump and seeped and percolated through it, not only after such waters left the dump, but while they were still in the dump, and that the lands or premises sought to be condemned were already devoted by the defendant to the same use for which the plaintiff sought to condemn them. Confessedly, the determination of the case depends largely upon the question of whether the waters carrying copper in solution, so long as they are still in the dump, are the property of the plaintiff or of the defendant. It may be conceded that the waters, though they carry copper in solution picked up from the dump as they

seep through it, after they were suffered and permitted to flow out of the dump and seep and percolate through soil and earth on the claim or claims of the defendant not conveyed to the plaintiff became a part of such soil and earth and the property of the defendant, and thus lost to the plaintiff. But how does the matter stand so long as the waters seeping and percolating through the dump are still in the dump and a part of it? May the plaintiff, as long as the waters are so still in the dump, collect, divert, and convey them to tanks where the copper in solution may be precipitated and saved to the plaintiff? That is the question. It is conceded that the dump or deposit itself is personal property and is the property of the plaintiff, with the right at any time to remove it or any part thereof. That the dump contains copper of commercial value is not disputed. The gulch in which the dump is deposited is on the side of a mountain and is of funnel shape with the toe at the bottom or lower end of the dump and gulch. As described, it represents a somewhat inclined hopper in which material was deposited first on the lower and narrow part of it and then on higher levels along the upper portion of it. As the rain and snow fell on the dump the waters, as they seeped through it, picked up copper and other minerals in solution which at first were precipitated at the bottom or lower part of the dump; that is, the copper that was picked up as the waters seeped through the dump encountered precipitants which precipitated the copper again in the ore at the lower part of the dump, and, as the lower strata or lower part of the dump became charged with copper and the sulphides coated over with copper, retarding the precipitation, the copper in solution was carried out of the dump in the waters as they flowed out of it. The defendant, to collect such waters, excavated a tunnel on its own ground, the face of which was in close proximity to the bottom or lower part of the dump, and by such means collected the waters from the dump and conveyed them to precipitating tanks below. The face of the defendant's tunnel is not at or in the dump

itself but is 150 or 200 feet down the mountain side below the dump and close to or in a fill just below the dump, and placed there by a railroad company in building and laying its track. Confessedly, what the defendant did was to extend its tunnel or upraises so near the dump as to tap the waters therein, and the only use it made of such waters was to convey them to its precipitating tanks to save the copper in solution. It did not then nor at any time make any other use of such waters. What the plaintiff proposes to do is to construct a tunnel through the fill and on the surface of the defendant's claim, the face of which will be 150 or 200 feet above the face of the defendant's tunnel and extend two open trenches about 5 or 6 feet along at right angles to the face of its tunnel, and by such means gather and collect the waters in and at the bottom of the dump and convey them by a pipe line to its precipitating tanks below. In other words, the face of the plaintiff's proposed tunnel will be at the bottom or lower part of the dump with two short trenches running at right angles with the face of the tunnel. The gulch at that place is narrow and the dump is on bedrock. It is not contemplated by the plaintiff to take waters not in the dump, and, as made to appear, the proposed plan will not collect or take any other waters. It also is made to appear without any substantial conflict that before the material was deposited in the dump all waters flowing from the gulch were waters from freshets or high waters and that at greater portions of the year there was no water flowing from the gulch, and what waters did flow from it contained no minerals and partially were used by others for culinary and domestic purposes. And it also is made to appear that the waters which, at the time of the commencement of this action, were collected and conveyed by the defendant, were waters coming directly from the dump carrying copper in solution picked up as the waters seeped and passed through the dump.

Thus, under the circumstances, we are of the opinion that the waters carrying copper or other minerals in solution, so

long as they are in the dump and thus a part of it, and before they leave it and percolate through the soil and earth on the claim or claims of the defendant not conveyed to the plaintiff, are, like the dump itself, the property of the plaintiff; that it is as lawful for the plaintiff, so long as the waters are in the dump, to collect and remove them as it is to remove the dump itself; and that the grant which gave the plaintiff the right at any time to remove the dump or any part thereof also gave it the right to remove the waters carrying copper or other minerals of commercial value in solution.

The cases cited by the appellant do not, as we think, make against this holding. The case of *Nephi Plaster Co.* v. *Juab County,* 33 Utah, 114, 93 P. 53, 14 L. R. A. (N. S.) 1043, is cited to the effect that the term "mineral" is not limited to metal or metaliferous deposits but also includes petroleum and other liquids. That may be conceded. The point made in such respect is that copper in solution is a mineral, and, though the dump on the defendant's ground is the property of the plaintiff, nevertheless the mineral in solution is the property of the defendant. But the defendant makes no claim to any of the ore or other material deposited on the dump; and, since the copper in solution is from the dump and from the ore and material deposited thereon and therein and not otherwise, it would seem that the defendant has no better claim to the mineral in solution, so long as it is in the dump, than to the ore or other material in the dump.

Authorities and cases (40 Cyc. 626, 30 Am. & Eng. Ency. L. 323; *Crescent M. Co.* v. *Silver King M. Co.,* 17 Utah, 444, 54 P. 244, 70 Am. St. Rep. 810; *Hathorn* v. *Carbonic Gas Co.,* 194 N. Y. 326, 87 N. E. 504, 23 L. R. A. (N. S.) 436, 128 Am. St. Rep. 555, 16 Ann. Cas. 989; and other authorities) are cited to the effect that surface and percolating waters belong to the owner of the soil upon which it falls and through which it percolates; from which it is argued that the waters from rain and snow falling on the dump and seeping and

percolating therein belong to and become the property of the defendant, and, if in and through such seepage the waters pick up copper in solution, though from the dump, such copper also becomes the property of the defendant. The doctrine or principle announced in the cited cases may also well be conceded; but the rain and snow falling on the dump did not fall on the surface of the defendant's ground. The surface of that ground and upon which the dump rests was conveyed to the plaintiff. True, it was conveyed for dumping purposes, but, so long as the surface is occupied by the dump, it, as surface ground, is not susceptible of any other use; and waters falling on and flowing or seeping through the dump, so long as they are in the dump, do not fall on or seep or percolate through soil of the defendant or on or through any surface right owned by it but on a surface right and material, ore, rock, and earth owned by the plaintiff. The cited cases thus are not in point.

Cases also are cited (*Brown* v. *Spillman*, 155 U. S. 665, 15 S. Ct. 245, 39 L. Ed. 304; *Lanyon Zinc Co.* v. *Freeman*, 68 Kan. 691, 75 P. 995, 1 Ann. Cas. 403; *Westmoreland & Cambria National Gas. Co.* v. *DeWitt*, 130 Pa. 235, 18 A. 724, 5 L. R. A. 731; *Fairbanks* v. *Warrum*, 56 Ind. App. 337, 104 N. E. 983, 1141; *Wagner et al.* v. *Mallory et al.*, 169 N. Y. 501, 62 N. E. 584; *Duvall* v. *White*, 46 Cal. App. 305, 189 P. 324; *Humphreys Oil Co.* v. *Liles et al.*, [Tex. Civ. App.] 262 S. W. 1058; and other cases) to the effect that oil and gas are minerals and belong to the owner of the land so long as they are on it or subject to the owner's control; but, when it escapes and goes into other lands, or comes under another's control, the title of the former owner is gone, and that in such respect oil and gas resemble water as it seeps and percolates in the earth, especially salt and mineral waters having a market value. Again all that may be conceded, but, as is seen, no waters percolating through the soil of the defendant are here involved and are not sought or attempted to be taken by the plaintiff. What it proposes to do is to collect and take the waters carrying copper in solution while yet in

the dump and before they reach the soil or ground of the defendant. Were the plaintiff attempting to follow, collect, and divert waters, though they carry copper in solution, after they have left the dump and percolating in and through the soil and ground of the defendant not conveyed to the plaintiff, the cited cases would be applicable, but that is not what the plaintiff seeks to do. It may readily be conceded that waters, though they carry copper or other minerals in solution, which are suffered and permitted to flow and escape from the dump and seep and percolate through the soil and earth of the defendant's claims not conveyed to the plaintiff and on or in which it has no surface or other rights, are lost to the plaintiff and become the property of the defendant and may not be pursued or reclaimed or taken by the plaintiff.

A further point is made by the defendant that the plaintiff had no right to condemn because the premises sought to be condemned were already devoted to the same public use for which condemnation was sought by the plaintiff. As already observed, granting to the plaintiff the easements to lay a pipe line and to excavate a tunnel in no substantial degree interferes with the use, occupancy, or development of the defendant's mining claim or claims, or in carrying on its mining operations. What is claimed in such respect is that the defendant is now collecting and carrying away waters carrying copper in solution from the dump, and, if the plaintiff be granted its easement and permitted to construct its tunnel and trenches 150 or 200 feet above the defendant's tunnel, the plaintiff will collect and take substantially all of the waters in the dump carrying copper and other minerals in solution and thereby deprive the defendant from collecting such waters and precipitating the copper in solution. That is the pivot upon which turns the principal question in the case, Do the waters carrying copper in solution, as long as they are and remain in the dump and before they leave it and percolate through the soil and ground of the defendant not conveyed to the plaintiff, belong to the plaintiff or to

the defendant? We have no hesitancy in answering that question in favor of the plaintiff.

It also is claimed that the court erred in rejecting certain evidence offered by the defendant. Before the final hearing of the cause a hearing was had on plaintiff's application or motion for immediate possession of the premises sought to be condemned. At such hearing evidence was adduced by both parties as to plaintiff's right to condemn as well as to an immediate or speedy possession. The court, at the conlucion of such hearing and upon arguments and briefs of counsel, rendered and entered an order in which it was "ordered, adjudged, and decreed" that the sought condemnation and taking was for a public use, and that there was a present necessity "for the taking and occupation of the same pending the final determination of this case," and thus ordered and adjudged and decreed "that the plaintiff pending this action and until the further order of the court" be permitted to enter and occupy the premises in question. Thereafter, and when the further and final hearing of the case came on, it was stipulated between the parties that the evidence adduced at the former hearing should be considered as evidence "upon the final hearing herein," together with "such other evidence as may be received." The parties further stipulated that, "in the event a final order of condemnation is entered," the order should provide that the plaintiff had no claim, right, or title, or interest in or to any of the ores or minerals that may be beneath the surface of the premises sought to be condemned, and that the damages to the defendant amounted to $500, exclusive of damages by diversion of the waters, should the court ultimately conclude that the defendant was the owner thereof. Then counsel for the defendant stated to the court that, in view that the court had indicated that he would follow the theory outlined in his memorandum opinion on the order of immediate possession and occupancy, which offer, he presumed, would be objected to, and, if objections were sustained to the offer, the parties had agreed upon the

amount of damages in the sum of $500. Upon inquiry of counsel for plaintiff, they stated that they had no further evidence to offer. Then counsel for defendant stated that he offered to prove that the gulch where it connected with the main canyon was narrow and steep, but, as it extended up the side of the mountain it widened out and was less steep; that from the excavations made since the order of immediate possession it appeared that the soil on the side and the bottom of the gulch on the defendant's property and under the dump was from 8 to 30 feet deep; that the waters resulting from rain and snow then and in the past percolated through such soil as they reached the bottom of the gulch; that such soil prior to the deposits retarded the waters falling from the rain and snow, and that the dump further retarded them as they fell on and seeped through the dump; that in the defendant's mining operations a tunnel, excavated on and in its claim or claims, "intercepted and gathered the waters below the actual surface soil, which waters had been intercepted and diverted by a pipe line of the defendant," and that such tunnel waters are a part of the waters used by the defendant in precipitating therefrom the copper content taken into solution from the surface dump and in copper rock in place; and that "the effect of the proposed tunnel and diverting works and pipe line of the plaintiff, if the same were constructed, will be to necessarily divert and impound and take away from the defendant the tunnel waters aforesaid."

Objections by the plaintiff were made to the offer on the ground that the testimony proposed was irrelevant, immaterial, and incompetent, and related only to the ownership of the water containing copper in solution which the plaintiff sought to collect and divert, a matter which had already been adjudicated by the court on the former hearing and was res adjudicata. The objection was sustained. Complaint is made of the ruling. It is urged by the respondent and denied by the appellant that the order granting immediate possession and occupancy was res adjudicata as to the right

of the plaintiff to condemn and occupy the premises, and that the only remaining question to be determined was the amount of damages. On the contrary, the appellant contends that the order was merely interlocutory and during the pendency of the proceedings was subject to modification or to be vacated as circumstances and conditions might require, and, being interlocutory, the defendant was entitled to be further heard on the question of the plaintiff's right to condemn and take or possess the premises. We think the contention of the appellant in such respect is well founded.

Comp Laws Utah 1917, § 7339, provides:

"*Occupancy of premises pending action. Notice. Hearing. Bond. Restraining order.* The plaintiff may move the court or a judge thereof, at any time after the commencement of suit, on notice to the defendant, if he is a resident of the county, or has appeared in the action, otherwise by serving a notice directed to him on the clerk of the court, for an order permitting the plaintiff to occupy the premises sought to be condemned, pending the action, and to do such work thereon as may be required for the easement sought, according to its nature. The court or a judge thereof shall take proof by affidavit or otherwise, of the value of the premises sought to be condemned and of the damages which will accrue from the condemnation, and of the reasons for requiring a speedy occupation, and shall grant or refuse the motion according to the equity of the case and the relative damages which may accrue to the parties. If the motion is granted, the court or judge shall require the plaintiff to execute and file in the court a bond to the defendant, with sureties to be approved by the court or judge, in a penal sum to be fixed by the court or judge, not less than double the value of the premises sought to be condemned and the damages which will ensue from condemnation, as the same may appear to the court or judge on the hearing, and conditioned to pay the adjudged value of the premises and all damages in case the property is condemned, and to pay all damages arising from occupation before judgment in case the premises are not condemned, and all costs adjudged to the defendant in the action. The sureties shall justify before the court or judge after a reasonable notice to the defendant of the time and place of justification. The amounts fixed shall be for the purposes of the motion only, and shall not be admissible in evidence on final hearing. The court or judge may also, pending the action, restrain the defendant from hindering or interfering with the occupation of the premises and the doing thereon of the work required for the easement."

Under the statute it is apparent that the power of the court to grant or refuse an application to occupy premises sought to be condemned, "pending the action," is, to a large extent, discretionary, depending upon the showing of necessity for a speedy occupation. To wisely exercise the discretion the court might well require the plaintiff ■ to make a showing, not only as to the necessity for a speedy occupation, but also a prima facie showing as to his right to condemn, if that right be controverted. It also would seem, from the language of the statute, that the plaintiff may move the court, etc., to occupy the premises sought to be condemned, "pending the action," and requiring the giving of a bond "to pay all damages arising from occupation before judgment in case the premises are not condemned," that an order permitting immediate possession "pending the action" would be interlocutory and not final, and on the face of the order itself it appears that it permitted the possession and occupancy "pending the action and until the further order of the court," and thus was intended to be merely interlocutory. When the cause was finally submitted as to all of the issues, the court made findings and conclusions and rendered a decree upon all of the issues, including the questions or issues that the use of the premises applied for was a public use and authorized under the statute, that the taking was necessary for such use, and that the plaintiff was entitled to exercise the right of eminent domain. Thus, because of the statute and the nature of the orders the first granting possession pending the action and until the further order of the court and the second a perpetual occupancy, we think the first order was interlocutory and the second final. *Templeton* v. *District Court, 47 Cal.* 70; *People* v. *District Court,* 11 Colo. 147, 17 P. 298.

We are aware that in some jurisdictions it is held that an order granting immediate possession of premises sought to be condemned is a final order and appealable. *Philadelphia, etc., St. Ry. Co.'s Petition,* 203 Pa. 354, 53 A. 191; *Tennessee Cent. R. R. Co.* v. *Campbell,* 109 Tenn. 640, 75 S. W. 1012;

*Bluefield* v. *Bailey*, 62 W. Va. 304, 57 S. E. 805. Indeed, in some jurisdictions it is the rule that a landowner has not the right even to be heard as to the condemner's right to condemn or as to the necessity for the taking, especially where the condemnation is sought by the state, a municipality, or by a quasi public corporation, or utility. Logically, it would seem that even as to such a condemner the landowner had the right to controvert and contest the necessity for the taking. However that may be, under a statute such as we have, giving an individual or mere private corporation not engaged in public service the right to exercise eminent domain under the circumstances enumerated in the statute, we think the landowner whose property is sought to be condemned and taken, has, as against such a condemner, an undoubted right to controvert, and contest the taking and the necessity therefor. Thus, the prior order being interlocutory and not final, and the appellant having the right to controvert and contest the taking and the necessity therefor, had the right, as did the plaintiff, before final judgment, to give further evidence bearing upon such questions. We think this holding is not in conflict with the cases of *Ketchum Coal Co.* v. *District Court*, 48 Utah, 342, 159 P. 737, 4 A. L. R. 619 and 50 Utah, 395, 168 P. 86.

We therefore are of the opinion that the ruling that the prior order was res adjudicata, if the ruling was based on that ground, was erroneous. We also are of the opinion that portions of the offered testimony were also material, especially that part of the offer where it was offered to prove that among the waters collected and diverted by the defendant by means of its tunnel were waters seeping and percolating through the soil and collecting copper in solution from rock in place on the defendant's claims and that the proposed tunnel, diverting works, and pipe line of the plaintiff would divert, impound, and take such waters from the defendant's tunnel. However, since the judgment does not give the plaintiff any such waters, we think the ruling harmless.

We have already indicated that the plaintiff is entitled to collect, divert, and take the waters carrying copper and other minerals in solution as long as such waters are in and a part of the dump, but that the plaintiff is not entitled to pursue and reclaim or take such or any waters after they have left the dump and seep and percolate through the soil or earth on the defendant's claim or claims not conveyed to the plaintiff. Of course, as is seen, the plaintiff, by its proposed plan of collecting and diverting the waters in the dump, to a large extent at least, will deprive the defendant of such waters; but the plaintiff has the undoubted right to do that. It is not required to suffer or permit such waters in the dump ladened with copper or other minerals in solution to flow out and seep and percolate in and through the soil of the defendant's claim or claims not conveyed to the plaintiff for the defendant's use and benefit. The defendant has an interest in and to such waters only after they are suffered and permitted to flow and leave the dump and percolate through the soil and earth and become a part of its ground not conveyed to the plaintiff. If the plaintiff in collecting and diverting waters shall take waters which are not in the dump or a part of it, but are seeping and percolating through the earth and soil of the defendant's ground not conveyed to the plaintiff, the defendant is not without remedy and by this action is not precluded from asserting its right to such waters.

The findings and the judgment of the court are in harmony with these views, except in one of the conclusions stated by the court wherein the court stated a conclusion that "although such water and solutions in said dump or deposit should percolate through the natural surface soil beneath said dump and upon the mining claims of the defendants before plaintiff should have collected, conserved, or diverted the same, plaintiff would not be thereby divested of said title, but on the contrary plaintiff would continue throughout such percolation until, upon and subsequent to plain-

tiff's collection and diversion of said waters and solutions, the absolute owner thereof, with the untrammeled right in plaintiff to dispose of said waters and solutions as plaintiff's advantage might dictate." Such a statement would imply that the plaintiff has the right to follow the waters after they leave the dump and seep and percolate through the soil and earth on the defendant's ground or claims not conveyed to the plaintiff. But not anything of that kind is contained in the findings or in the judgment. The findings and the judgment give the plaintiff the right to take the waters carrying copper or other minerals in solution only so long as they are in the dump and a part of it and give the plaintiff no right to pursue waters seeping and percolating through the soil and earth on the defendant's grounds not conveyed to the plaintiff. We therefore think that the ruling refusing the defendant's offer was harmless.

However, since conclusions may to some extent be considered as amplifying or reflecting findings and a judgment, that portion of the conclusions just referred to is disapproved and ordered stricken and the district court directed to recast its conclusions in such respect, and, if there be any such or similar provisions either in the findings or in the judgment which have escaped our attention, to likewise in such respect recast those. In all other particulars the findings are approved and the judgment affirmed, with costs to respondent.

THURMAN, FRICK, and CHERRY, JJ., concur.

GIDEON, C. J., concurs in the result.