GLOVER v. UTAH OIL REFINING CO.

No. 3998. Decided September 6, 1923. (218 Pac. 955.)

WATERS AND WATER COURSES—OIL REFINING COMPANY COULD BUY WATER IN ARTESIAN DISTRICT FROM SOME OF OWNERS AND USE WATER BEYOND LIMITS OF DISTRICT WITHOUT INJURY TO THE OTHER OWNERS. An oil refining company could purchase from the owners of lots in an artesian district their rights to the water owned by them, and conduct the water to its oil refinery beyond the limits of such district, provided that in so doing it did not interfere with the right of other owners to

receive water in proportion to their surface area, since the purchase and use of such water did not injure the rights of such other owners.†

Appeal from District Court, Third District, Salt Lake County; *Wm. M. McCrea*, Judge.

Action by M. Glover against the Utah Oil Refining Company. Judgment of dismissal, and plaintiff appeals.

AFFIRMED.

*J. Louis Brown*, of Salt Lake City, for appellant.

*Ball, Musser & Robertson*, of Salt Lake City, for respondent.

---

† *Horne* v. *Utah Oil Refining Co.*, 59 Utah, 279, 202 Pac. 815; *Stowell* v. *Johnson*, 7 Utah, 215, 26 Pac. 290.

THURMAN, J.

This case is a sequence of the case of *Horne* v. *Utah Oil Refining Co.*, hereinafter referred to as the Horne Case, 59 Utah, 279, 202 Pac. 815, recently decided by this court.

The plaintiff in this case was also one of the plaintiffs in the Horne Case, and, as will be seen by reference thereto, plaintiffs therein, including this plaintiff, were the owners in severalty of certain city lots within an artesian district situated in Salt Lake City, and upon each of said lots the several owners thereof had driven one or more artesian wells and thereby secured a supply of water which was used for beneficial purposes. The Utah Oil Refining Company, defendant in that case, and also defendant here, was likewise the owner of a lot in said artesian district, 10 rods square in area, upon which it had driven several wells, each of which was of greater capacity than any of the wells driven by the plaintiffs. The real grievance complained of in the Horne Case was that, owing to the increased number and capacity of defendant's wells, the supply of water in the district was

being rapidly exhausted and the pressure thereby becoming so reduced that the plaintiffs were being deprived of water to which they were entitled, to their great and irreparable injury. It was further alleged in the complaint in that case that the purpose of defendant was, not to use the water from its wells on the land upon which the wells were located, but to conduct the water beyond the boundaries of said artesian district to its oil refining plant and there use it for commercial and manufacturing purposes. Plaintiffs prayed for injunctive relief. It is not necessary to state defendant's contention in that case. It is sufficient to say that the trial court entered judgment for the principal relief prayed for, from which judgment defendant appealed. In this court, on the appeal, we held that each of the owners of lots in said artesian district, including the defendant, was entitled to a quantity of said water in proportion to the surface area of his land as long as he put the water to a beneficial use. The question as to whether or not the defendant had the right to convey its portion of the water beyond the boundaries of the artesian district in which its land was situated was not determined by the court. There is a suggestion, however, in the opinion of the court that the doctrine enunciated in the case of *Cohen* v. *La Canada Land, etc., Co.*, 142 Cal. 437, 76 Pac. 47, that percolating waters might be conveyed away for use on alien lands if it could be done without injury to an adjoining owner, appeared to be "a just and equitable application of the doctrine of reasonable use."

The plaintiff in the case at bar is the owner of a lot in the artesian district in question, and has driven a well thereon, and alleges that according to the surface area of her lot as compared with the whole surface area of land in said artesian district she is entitled to use, and has used, 6.58 gallons of water per minute of time. She further alleges, in substance, that by virtue of her ownership of said lot she is entitled to an additional quantity of said water which, together with the 6.58 gallons per minute, amounts in the aggregate to such a proportion of the entire waters of the district as the surface area of her lot bears to the surface area of all the lots owned by persons actually using water for beneficial purposes on

their said lots.   In other words, plaintiff's claim, as alleged
in her complaint, is based upon the theory that the waters of
the artesian district belong to the owners of the land therein
who are using the water upon their land for beneficial pur-
poses, and should be allotted to such persons in proportion to
the surface area owned by such persons to the exclusion of
the other lot owners who are not using the water upon their
lands within said district.   The complaint of plaintiff fur-
ther shows that she can beneficially use, and intends to use,
15 gallons of water per minute upon her said lot, and that
that quantity of water is necessary for the purpose for which
it will be used.   The complaint alleges that defendant has
purchased, or contracted to purchase, from more than 100
lot owners in said artesian district their rights to the water
and purposes driving wells on said lots and conducting the
waters thereof to a point beyond the boundaries of said ar-
tesian district and there use the same for commercial and
manufacturing purposes.   Plaintiff prays that defendant be
enjoined from using any of said waters for any purpose be-
yond the limits of said district, and that plaintiff be decreed
the right to use an additional quantity of said waters in ac-
cordance with her claim as above set forth.

   Defendant filed a general demurrer to the complaint, and
the court sustained the demurrer.   Plaintiff elected to stand
upon her complaint.   The court entered judgment dismissing
the action, and plaintiff appeals.

   As manifestly appears from the foregoing statement, there
is but one question to be determined.   Has the defendant the
right to purchase from the owners of lots in said artesian dis-
trict their rights to the water owned by them, and conduct the
water to its oil refinery beyond the limits of said district, and
there use the same?

   As heretofore stated, it was suggested in the opinion in the
Horne Case that such appeared to be a just and equitable
application of the doctrine of reasonable use so long as the
owners of adjoining lots in said district were not injured
thereby.   We still adhere to that view of the question, and
perhaps in the last analysis the real question is:   What would
constitute an injury to adjoining owners or persons owning

water rights within said artesian district? This precise question has never been determined in this jurisdiction, and we think it will be conceded that little or no assistance can be derived by an examination of cases from other jurisdictions. Much is said in many of the cases, mostly in the nature of dicta, aginst the right to convey such water to alien lands away from the land in which the waters are found. Much is also said, as in the Cohen-La Canada Case, supra, in favor of the right so long as correlative owners are not injured thereby. But little or nothing has been said as to what, in such cases, constitutes an injury. This question, however, would be simple and free from complication were it not for the claim made by plaintiff that she is not only entitled to 6.58 gallons of water per minute, which would be the limit of her right if every other lot owner was using his correlative portion of water within the district, but she also claims that if any co-owner disposes of his right to one who intends to convey it to a point outside of the district then the right of the would-be purchaser immediately becomes the property (to the extent of their reasonable necessities) of those who remain and continue to use the water upon their lots. It is this claim of plaintiff that complicates the question as to what constitutes an injury to an adjoining owner. If plaintiff's contention was that defendant contemplated taking a portion, or all, of plaintiff's 6.58 gallons of water per minute, the injury would clearly appear, and the complaint would unquestionably state a cause of action.

Counsel for appellant assumes in his brief that the question as to the right of correlative owners in and to the waters of an artesian district to convey them away to be used upon alien lands was settled and determined by the decision in the Horne Case and quotes from the opinion, at page 301 of 59 Utah, at page 824 of 202 Pac., the following language:

"The consensus of opinion among the authorities seems to be that the doctrine of correlative rights or reasonable use of percolating water includes the idea that the water cannot be conveyed away, either for waste or use, from the land in which the water is found in its natural state. In that respect it is somewhat analogous to the doctrine of riparian rights."

The language quoted by counsel, standing alone, does not fairly reflect the views of the court, for immediately following the excerpt quoted, and in the same connection, the court says:

"In *Cohen* v. *La Canada L. Co.*, supra, a California case subsequent to the Walkinshaw Case, it was held that percolating waters may be taken for use upon other land if it can be done without injury to adjoining owners. This seems to the court to be a just and equitable application of the doctrine of reasonable use. This question is perhaps of no practical importance in the case at bar, and it is only referred to here lest it might be inferred that we are committed to the proposition that in no case can percolating water, as matter of right, be conveyed to alien lands. The question is reserved until it becomes necessary to determine it."

The language of the paragraph, considered as a whole, is far from unqualifiedly indorsing counsel's contention. It is somewhat singular that a proposition which was expressly reserved by the court for future determination should be considered as having been conclusively settled and determined.

It is unquestionably true that the consensus of opinion is as stated in the language first above quoted. It is also true that in jurisdictions where the consensus of opinion referred to exists the common-law doctrine of riparian rights has not been entirely abolished, as in the state of Utah. *Stowell* v. *Johnson*, 7 Utah, 215, 26 Pac. 290; *Snake Creek M. & T. Co.* v. *Midway Irr. Co.*, 43 Sup. Ct. 215. Such is not the case in California and some other states on the Pacific Coast. 2 Wiel on Water Rights (3d Ed.) § 1108.

This court in the Horne Case did not intend, as its language expressly indicates, to hold that the water of correlative owners in an artesian district could in no case be conveyed away for use on other lands; nor did it intend to indorse the view that there is any analogy between the correlative rights of owners in such cases and the common-law doctrine of riparian rights. In the opinion of the writer the analogy, if any, is too remote for serious consideration, especially in jurisdictions where riparian rights have been entirely abolished. Every student of the law of riparian rights is cognizant of the fact that the doctrine rests upon the fundamental idea that every riparian owner is limited, in

the first place, in the quantity of water he may use, and, in the second place, must so use it that the return waters therefrom will find their way back into the stream from which they were diverted. The axiomatic principle is that the waters of the stream must be permitted to flow in quantity and quality as they "were wont to flow from time immemorial." The physical attributes of the condition under which artesian water finds its way to the surface are such as to preclude the idea of returning the water, or any part thereof, to the basin from which they were taken. So that, while the consensus of opinion referred to in the Horne Case finds some analogy between correlative rights to percolating water and riparian rights under the common law, there is, in the opinion of the writer, little or no analogy whatever, especially as affecting the question under review, in this jurisdiction.

Counsel for appellant cites and quotes at length Wiel on Water Rights (3d Ed.) §§ 1118, 1122, and also in part sections 1124 and 1090, all in volume 2 of the work referred to. As was to be expected, the cases referred to by the distinguished author are generally California cases in which the doctrine of riparian rights is still recognized to a considerable extent, and upon which the law of correlative rights has been established because of some supposed analogy in principle. The leading case cited by the author is the case of *Katz* v. *Walkinshaw*, 141 Cal. 117, 70 Pac. 663, 74 Pac. 766, 64 L. R. A. 236, 99 Am. St. Rep. 35. Counsel for appellant also cites the *Katz* v. *Walkinshaw* Case, and it is no doubt the leading case in that state upon the questions therein decided. Since that time the case has been followed by numerous decisions generally adhering to the doctrine therein announced. In the Horne Case, at pages 292 and 301 of 59 Utah, at pages 820 and 824 of 202 Pac., we quote at considerable length from the Walkinshaw Case showing the exact nature of the case and that defendant in that case was actually taking water from plaintiffs which they had been using for domestic and irrigation purposes and which was necessary for such use. The court held in that case that the complaint stated a cause of action for injunctive relief. The complaint in the instant case shows no such grounds for relief. There

the defendant assumed to interfere with an existing use for beneficial purposes and with a right which was recognized in the state of California, and, as stated by Mr. Wiel in the volume supra (section 1122):

The "defendants by means of other wells on other land drew off the water from plaintiff's well, for use on a distant tract, causing plaintiff's well to dry."

No such question is presented in the case at bar. If such question were presented here, as already stated, the complaint would unquestionably state a cause of action. Plaintiff admits that she is receiving and will continue to receive water in proportion to her surface area, notwithstanding the contemplated use by defendant on alien lands. Plaintiff does not claim that defendant purposes interfering with a right which plaintiff is enjoying at the present time, but with a right which plaintiff hopes to get in the event that those who now own the right should abandon it or dispose of it to be used outside the artesian district. The case in that respect is different from any case we have thus far examined.

Before leaving entirely the question of the supposed analogy between riparian rights as understood at common law and correlative rights under the doctrine of reasonable use, a few observations further may not be out of place. In California, and some other states on the Pacific Coast, the common law of riparian rights in many instances is recognized and enforced. This seems to be the principal reason why correlative rights to the use of water in those states is said to be analogous to riparian rights and that the same principles of law should be applied. If this be true what becomes of the theory that correlative rights should be determined by the law of riparian rights in this jurisdiction where riparian rights have been abolished as incompatible with local conditions? It is axiomatic that when the reasons for a law cease to exist the law itself should be either abolished or repealed. The principal point made by the writer of the opinion in *Stowell* v. *Johnson,* supra, against the application of the law of riparian rights in the then territory of Utah was because it subjected the waters to a restricted use, and was therefore incompatible with our local conditions. If the law of riparian

rights in the state of Utah was abrogated, as stated in *Stowell*
v. *Johnson*, because it was incompatible with local conditions,
then for the same reasons the rule contended for by appel-
lant, if it ever was recognized and in force in this jurisdic-
tion, should be abrogated and abolished. But, like the doc-
trine of riparian rights, the court is of opinion it has never
been recognized here, nor has any attempt been made to en-
force it until the present controversy arose.

Appellant also contends as additional grounds for relief
that to permit the water of a correlative owner to be con-
veyed to lands outside the district "is to deprive her land of
the advantage of position which nature has given it and cer-
tainly depreciates its value." We are not prepared to say,
in this case, at least, that such contention should prevail.
Carried to its logical sequence it might ultimately deprive
plaintiff and others situated on higher lands in the same dis-
trict of their just proportion of the water as determined by
the surface area. It is alleged in the complaint that defend-
ant's 10 rods square is situated at about the lowest point in
the district. If the bottom of the water bearing stratum in
the artesian basin is parallel with the surface of the ground,
and defendant is situated at the lowest point upon the sur-
face, defendant in the future, if necessary, could just as con-
sistently contend that it is entitled to the advantage of its
position and therefore operate its wells to the point of com-
pletely draining the upper portion of the basin. We do not
here decide that such conduct on the part of defendant would
be permissible, but only to illustrate the fact that "advantage
in position" should not perhaps be considered as a control-
ling factor in cases involving the correlative use of water.

In addition to Wiel on Water Rights, supra, and the Walk-
inshaw Case appellant relies on *City of San Bernardino* v.
*City of Riverside,* 186 Cal. 7, 198 Pac. 784.

The court is of opinion that enough has been said in the
preceding pages of this opinion to clearly demonstrate that
notwithstanding our estimate of the high standing and emi-
nent ability of the California Supreme Court its opinions
upon questions analogous to the one at bar should have no
decisive influence in determining the judgment of this court

in cases arising here.  This we state with all due deference
because of the varying conditions to which we have referred.

What has been said should not be regarded as a concession
that the California court is committed to the doctrine con-
tended for by appellant.  On the contrary, we have not been
able to find a single case that goes to the extent of holding
that a correlative owner of artesian water cannot convey
such water to be used on alien lands, except in cases where
such use would injuriously affect the rights of an adjoining
owner.  As bearing upon this question see the following au-
thorities cited by respondent:  2 Kinney on Irrigation (2d
Ed.) § 1166 et seq.; 2 Weil on Water Rights, supra, § 1068
et seq.; *Schenk* v. *City of Ann Arbor,* 196 Mich. 75, 163 N.
W. 109, L. R. A. 1917F, 684, Ann. Cas. 1915E, 267; *Patrick*
v. *Smith,* 75 Wash. 407, 134 Pac. 1076, 48 L. R. A. (N. S.)
740; *Meeker* v. *City of East Orange,* 77 N. J. Law, 623, 74
Atl. 379, 25 L. R. A. (N. S.) 465, 134 Am. St. Rep. 798;
*Katz* v. *Walkinshaw* and *Cohen* v. *La Canada Land, etc., Co.,*
supra; *San Bernardino* v. *Riverside,* supra, and cases there-
in cited.

It is unnecessary to prolong the discussion as to this feature
of the case.  We come back almost to the point from which we
started.  The question is:  What are plaintiff's rights in the
artesian district, and does the complaint show that her rights
will be injured by the contemplated use of water by the de-
fendant company?  The more we consider this question the
more we are convinced that the rule declared by this court in
the Horne Case, as to the measure of each correlative owner's
rights in the waters of an artesian district, is correct and in
most cases will mete out substantial justice.  There may ex-
ceptions arise not now foreseen by the court.  If so, they will
no doubt be so clearly differentiated as to take them out of
the general rule and call for such modifications as justice
may require.  The plaintiff, under the rule laid down in the
Horne Case, according to her complaint, is clearly entitled to
6.58 gallons of water per minute, and every other owner of
a like surface area in the artesian district is entitled to the
same quantity as long as he puts it to a beneficial use, whether
he uses it within the district or at some point outside.  We

are not inclined to subscribe to the doctrine that the owner of a water right within an artesian district cannot use it, or dispose of it for use, beyond the boundaries of the district without the right thereto being forfeited to other users within the district. The contention of appellant in that regard, in the opinion of the court, is utterly incompatible with the right of private property and the established policy of the state, which permits a change of place in the use of water as long as the rights of others are not injured thereby. In the instant case the rights of plaintiff, as defined in the Horne Case and in this opinion, will not be injured by the contemplated change in the place of use, and consequently it follows that plaintiff's complaint does not state facts sufficient to constitute a cause of action.

The demurrer thereto was properly sustained, and the judgment of the trial court is affirmed at appellant's costs.

WEBER, C. J., and GIDEON and CHERRY, JJ., concur.

FRICK, J., did not participate.