UTAH COPPER CO. v. STEPHEN HAYES
ESTATE, Inc., et al.

No. 5302. Decided March 28, 1934. (31 P. [2d] 624.)
Rehearing Denied November 30, 1934.

*Badger, Rich & Rich,* of Salt Lake City, for appellants.

*Dickson, Ellis, Parsons & McCrea,* of Salt Lake City, for respondent.

DILWORTH WOOLLEY, District Judge.

The Utah Copper Company, a corporation, brought this action against the Stephen Hayes Estate, Inc., a corporation, and others, to condemn the right to use certain lands in aid of mining. The lands desired by plaintiff are described in the complaint and throughout the record by metes and bounds and also by letters of the alphabet. Only the letters will be used herein. As the individual defendants are inter-

ested in the case only because they are the stockholders of the Stephen Hayes Estate, Inc., which is the principal defendant, they will not be referred to hereafter.

A trial was had before the court, sitting without a jury, to determine the preliminary questions which the court must decide in all condemnation cases (Comp. Laws Utah 1917, §§ 7333 and 7338), at the conclusion of which the court found, among other things, as conclusions of law and fact, that the uses to which the property is to be applied are uses authorized by law; that the taking is necessary to such uses; and that the property to be taken is not already appropriated to a public use, except that a part thereof which is used by the Bingham & Garfield Railway Company for railroad purposes, with which plaintiff's proposed use will in nowise interfere; and then, upon a stipulation being filed by the parties concerning the damages which defendant will sustain by reason of the taking and the severance, exclusive of any damage which defendant claims on account of the waters hereafter to be described, which are the principal subject of the litigation, the trial court entered judgment for plaintiff according to the prayer of the complaint, awarding damages for the stipulated sum. The damages were thereupon paid into court, and the court thereupon entered a final judgment of condemnation. The judgment also provided that defendant should pay the costs of trial.

The defendant appeals from the judgment, assigning a large number of errors in relation to the findings of fact, the conclusions of law, and the judgment, upon which it invokes and is entitled to have a ruling by this court upon the fundamental question of whether or not the plaintiff as a matter of law is entitled to condemn tracts C and D for the purposes for which they are desired. Defendant also raises a question as to which side is entitled to the costs in the lower court.

The controlling facts in the case, abstracted from the findings made by the trial court, are as follows: In conducting

and carrying on extensive mining operations by the open cut method, in the West Mountain mining district, Salt Lake county, Utah, it is necessary for plaintiff to remove large quantities of low-grade ore or overburden from its mining claims and properties in order to facilitate and render possible the mining and removal of the higher grade ores contained therein. The overburden so removed must be deposited upon the surface of adjacent lands in close proximity to the mining claims from which it is removed. Heretofore plaintiff has deposited immense quantities thereof upon property which it owns in fee and which is located in a certain gulch in the mountainside known as Dixon Gulch. This gulch extends down the mountainside from the west toward the east, with an average slope of about 26 per cent; and at its lower extremity, where it joins Bingham Canyon, it is considerably narrower than above, being shaped somewhat like a funnel.

Immediately adjoining and to the east of plaintiff's land upon which said dump is situated is a tract of land known as the Valentine Script patent, embracing the West ½ of the East ½ of the northwest quarter, section 26, township 3 south, range 3 west, Salt Lake base and meridian, which embraces the land sought to be condemned. The Stephen Hayes Estate, Inc., is the owner in fee of the land sought to be condemned, subject to an easement over part thereof owned by the Bingham & Garfield Railway Company for railroad purposes. This easement was acquired by the railway company from the predecessors in interest of defendant, in part by grant and in part by a judgment in condemnation proceedings. The railway company has placed a large fill in and across Dixon Gulch, upon its right of way, about two-thirds of which fill is upon land owned by plaintiff and one-third upon land owned by defendant. Much of the material contained in the fill is of the same character as the material contained in the dump. Upon this fill the railway company has constructed and maintains and uses tracks, buildings,

and other structures for railroad purposes. The railway company, so far as it has the right to do so, has consented to plaintiff's use of the land sought to be condemned for the purposes for which it is desired. The dump adjoins the railway fill on the west.

The low-grade ores of which the dump is composed contain small quantities of copper in carbonate and sulphide form, amounting in the aggregate to many millions of pounds of copper. This copper, after the ores have remained exposed to the action of air and meteoric waters, becomes soluble in water, and may be recovered by precipitating the same by the use of copper precipitants. The dump, due to the accumulation of the rains and snows falling thereon, has become saturated with water; and, on account of the nature and character of such ores, a portion of the copper contained therein has been leached therefrom and is held in solution in the water. This leaching process is continually going on, and, we may infer, will continue until the copper in the dump is exhausted. If the water which falls upon the dump and which finds its way down and through the same by seeping and percolating through the voids can be captured and subjected to the action of copper precipitants, thereby a large amount of the copper contained in the dump can be recovered and produced by the plaintiff at a profit.

In order to recover the copper which has been and is continually being leached from the ores in the dump and taken up by the water in solution, it is necessary for plaintiff to collect the water and conduct the same through pipes, or other suitable means of conveyance, to tanks in which it may be confined and subjected to the action of precipitants. The trial court did not directly find that it is impossible or impracticable for plaintiff to collect the water upon plaintiff's own ground and there conduct the same into pipes in which it may be carried to the tanks; but the court did find that, in order for plaintiff to collect the water and conduct the same into pipes, it is necessary and essential for plaintiff

to construct a tunnel, with a raise from the face thereof, and short branches extending therefrom, beneath the surface of a portion of defendant's land, in which to collect the water and from which it may be conducted into pipes and carried thence to the tanks, which are in Bingham Canyon below the point where it is joined by Dixon Gulch; and it is also necessary for plaintiff to utilize as a conduit, ditch, outlet, or channel for the purpose of conducting the copper bearing waters from the dump to the collecting works aforesaid that portion of Dixon Gulch extending across a portion of the said property of the defendant and lying in part beneath the bottom of the railroad fill. That part of defendant's property which it is necessary for plaintiff to use as a conduit, outlet, or channel for the copper waters, after they leave the dump, is a tract containing 1.37 acres, extending entirely across the gulch at its narrowest point and adjoining plaintiff's property on the east. This is designated as tract D. The tract desired as a site for the tunnel and collecting works is designated as tract C. Two other tracts, A and B, are wanted as easements in which to lay pipes in which to carry the waters from this and other dumps after they have been collected; and tract E is wanted as a site for an electrical transmission tower. As the controversy between the parties relates mainly to the right of plaintiff to condemn tracts C and D, the rights to A and B being only incidental to the use of the former, and there being no question at all about tract E, the discussion will be limited to tracts C and D, principally the latter.

All of the copper contained in the waters with which this action is concerned comes from the ores contained in the dump, which is owned by plaintiff and which is situated upon land owned by plaintiff; except that a small part thereof comes from the ores contained in the railroad fill; and all of the waters which are involved herein fall upon the dump and the fill in the form of rain and snow and find their way by seeping and percolating through the

soil and earth on and above bedrock, following the course of Dixon Gulch. In the course of their journey they enter and cross tract D, seeping and percolating through the soil and through the railroad fill, and finally arrive at the collecting works on tract C. There is no surface stream flowing in Dixon Gulch. Before the fill and the dump were placed there, the summer rains and melting snows ran off in a short time, and then the bed of the gulch became and remained dry. Since the dump and fill have been placed there, they have tended to retard the run-off, releasing the water more gradually than before. There is water issuing from the toe of the fill, about six to ten feet above the bottom of the gulch, which defendants call Hayes Spring, but which plaintiff says, and the court found, is not a spring. There is also water coming through a tunnel which extends under the fill and into the dump; but, as there is no controversy about this particular water, it will not be referred to again. None of the copper contained in the water is leached from rock in place on defendant's land; but all of the copper and all of the water with which we are concerned come directly from the dump and the area occupied by the dump. There was a conflict in the evidence concerning the source of the water and the copper contained therein, the defendant having two other theories to account for them, which it will be necessary for us to specify; but the court found the facts in that regard as we have stated them; and, this being a law case, we are bound by the findings.

The plaintiff desires to use tract D in its natural state as a way over which the copper-bearing waters will pass after they leave the dump and after they pass beyond the easterly boundary line of plaintiff's land. As a matter of fact, which we think plaintiff will not question, although the trial court did not so find, and we state it because it will help the reader to understand the issues of law which are involved, the plaintiff will do nothing whatever to assist or direct the waters across tract D; or to capture or control or reduce the waters

to actual possession while they are in the dump or in or upon plaintiff's land. The waters will go of their own accord that way, seeping and percolating through the soil. They will be captured, placed under control, and reduced to possession on tract C.

The trial court found that plaintiff in so using tracts C and D. will not, and the decree provides that it shall not, interfere in any way with any mining operations which defendant may desire to carry on in and upon the condemned tracts.

The question to be decided is: Does the plaintiff have the right under the law to condemn tracts C and D for the purposes for which they are desired?

The action is brought under Comp. Laws Utah 1917, § 7330, which, among other things, provides that the right of eminent domain may be exercised in behalf of canals, ditches, flumes, tunnels, aqueducts, and pipes for the supplying of persons, mines, mills, smelters or other works for the reduction of ores with water for domestic or other uses; and tunnels, ditches, flumes, pipes, and dumping places to facilitate the milling, smelting, or other reduction of ores, or the working of mines or mineral deposits; outlets, natural or otherwise, for the deposit or conduct of tailings, refuse or water from mills, smelters, or other works for the reduction of ores, or from mines or mineral deposits. The defendant says plaintiff has no right to condemn tract D under this statute, because that tract in its natural state is a gulch in the mountainside, and across the gulch is a railroad fill of earth and rocks 108 feet deep and 600 feet wide, completely filling the gulch from the crest of the ridge on one side to the crest of the ridge on the other; and therefore tract D is not a ditch, flume, aqueduct, or tunnel or outlet, within the meaning of the statute. Hence it may not be condemned as such. Cases and authorities are cited and much argument expended to show the meaning of the terms "conduit," "ditch," "aqueduct," and "flume"; but

we do not find it necessary to enter into a discussion concerning the meaning of those terms or to take sides in that controversy; for, so far as the present point is concerned, the case may be decided without reference to any of those terms. This statute must be construed, wherein it may require construction, and applied to any particular case with as much liberality as its language may permit in order to carry out the purpose which the legislative power had in mind, which was to declare mining generally a public use in aid of which the power of eminent domain may be invoked. *Monetaire Mining Co.* v. *Columbus Rexall Consol. Mines Co.*, 53 Utah 413, 174 P. 172. In this view of the statute, we think its language is sufficiently broad to include the use for which plaintiff desires tract D. That tract is a natural outlet for the waters from the dump. The dump may be, and we think it should be, regarded as a part of plaintiff's works for the reduction of ores. The word "works," in the sense here used, means a place where industrial labor is carried on; the phrase "reduction of ores" means the separation of metals from the non metallic elements with which they are combined. See Webster's New International Dictionary. Hence the phrase "works for the reduction of ores" means a place where the industrial labor of separating metals from the nonmetallic elements with which they are combined is carried on. That place includes the dump, where the copper is separated from the ores, as well as the tanks in Bingham Canyon, where the copper is recovered from the water. Therefore we hold that tract D is wanted for a use which is within the express language of the statute, being a natural outlet for water from plaintiff's works for the reduction of ores. The objection above mentioned is not made as to tract C, that tract being clearly within the express provisions of the statute, which authorizes the taking of property for use as a tunnel to facilitate the working of mines or mineral deposits or reduction of ores.

The next point of attack upon the plaintiff's alleged right to condemn tracts C and D which we will consider is launched

from the standpoint of the law pertaining to the ownership of waters which seep and percolate through the soil; and that principle in the law of eminent domain which is to the effect that property which is being held for or devoted to a public use by one person may not be taken by eminent domain proceedings, as a general rule, by another to be used for the same purpose and in the same manner. Lewis on Eminent Domain (3d Ed.) § 440; *West River Bridge Co.* v. *Dix et al.,* 6 How. (47 U. S.) 507, 12 L. Ed. 535; *Cary Library* v. *Bliss,* 151 Mass. 364, 25 N. E. 92, 7 L. R. A. 765; *Suburban R. Co.* v. *Metropolitan West Side El. R. Co.,* 193 Ill. 217, 61 N. E. 1090; *Marsh Min. Co.* v. *Inland Empire Min. & Mill Co.,* 30 Idaho 1, 165 P. 1128; 20 C. J. 88.

It is settled law in this state, and, so far as we know, it is the law everywhere, that the ownership of such waters is vested in the owner of the soil through or in which they seep and percolate. This is so because they are a part of the land itself. *Willow Creek Irr. Co.* v. *Michaelson,* 21 Utah 248, 60 P. 943, 51 L. R. A. 280, 81 Am. St. Rep. 687; *Crescent Min. Co.* v. *Silver King Min. Co.,* 17 Utah 444, 54 P. 244, 70 Am. St. Rep. 810; *Petersen* v. *Cache County Drain. Dist.,* 77 Utah 256, 294 P. 289; *Utah Copper Co.* v. *Montana-Bingham Consol. Min. Co.,* 69 Utah 423, 255 P. 672. There is a limitation, however, upon the title which one may have in such waters, growing out of the doctrine of correlative rights and reasonable use, which has been declared to be the law in this state. *Horne* v. *Utah Oil Ref. Co.,* 59 Utah 279, 202 P. 815, 31 A. L. R. 883; *Glover* v. *Utah Oil Ref. Co.,* 62 Utah 174, 218 P. 955, 31 A. L. R. 900. But, as this doctrine has no application in this case, such limitation may be disregarded herein. The defendant goes on to say that there can be no ownership in seeping and percolating waters in the absolute sense, because of their wandering and migratory character, unless and until they are reduced to the actual possession and control of the person claiming them. They belong to the owner of the soil in a limited sense as

compared to other kinds of property. Their ownership consists in the right in the owner of the land to capture, control, and possess them; to prevent their escape, if he can do so, from his land; and to prevent strangers from trespassing upon his land in an effort there to capture, control or possess them. When they are reduced to actual possession or control by the landowner in whose domain they occur, they then cease to be percolating and seeping waters and become his personal property, and remain such so long, and so long only, as he keeps them in his possession or under his control. If he permits them to leave his land by seeping or percolating or flowing therefrom, or if they get beyond his control, he loses all right, title, and interest in them the instant they pass beyond the boundaries of his tract; and, if they enter into the lands of another, they thereupon become his property, and he then owns them by the same limited title. While the landowner may prevent the escape of such waters from his land, if he can do so, yet he has no right to follow them into the lands of another and there capture, control, or reduce them to possession. All of which is good law and sound doctrine and is not disputed by the plaintiff. Wiel on Water Rights, vol. 1, p. 35, and cases therein cited; *Westmoreland & Cambria Nat. Gas. Co.* v. *DeWitt*, 130 Pa. 235, 18 A. 724, 5 L. R. A. 731; Wiel (3d Ed.) §§ 37, 1100 and 3039; *Utah Copper Co.* v. *Montana-Bingham Consol. M. Co.*, supra; 40 C. J. 758, 759, and 904, 905; *Dougherty* v. *Creary*, 30 Cal. 290, 89 Am. Dec. 116; Kinney on Irrigation & Water Rights (2d Ed.) pp. 1150-1153; *Bear Lake & River Water Wks. & Irr. Co.* v. *Ogden City*, 8 Utah 494, 33 P. 135.

In applying the law as above stated to the case at bar, defendant goes on to say, in substance, that the copper-bearing waters, while belonging to the plaintiff so long as they remain in the dump and the area occupied by the dump, nevertheless become the property of the defendant the instant they cross the boundary line between the two properties and enter into the defendant's

land, which is tract D; and, since they belong to the defendant so long as they are in tract D, the defendant alone of all the world has the right there to capture, control, and reduce them to possession; that the Stephen Hayes Estate, Inc., has the same right to capture and reduce the copper-bearing waters to possession while they are in, upon, and a part of tract D, and to precipitate the copper therefrom that the Utah Copper Company has while they are in, upon, and a part of the dump and the area occupied by the dump; and that defendant intends to and will, if plaintiff fails in this action, capture the copper waters in tracts C and D and precipitate the valuable copper therefrom. Therefore defendant concludes the plaintiff has no right in law to take defendant's lands by these condemnation proceedings and thereby deprive the defendant of its right to capture the waters which seep and percolate through the same and to extract the copper therefrom, for the result of a judgment of condemnation in this case would simply be to take defendant's property and give it to plaintiff, which would be in direct violation of the principle of the law of eminent domain above stated.

The argument is sound. We see no escape from the conclusion announced.

The plaintiff, however, has advanced several lines of argument in support of the right which it claims, which we will next consider, and show why we think none of them is valid. It is said that the copper solutions are not water within the definition to which the law of water applies, but are instead an artificial product of plaintiff's industry and expense, originating as such in and upon plaintiff's property and following a known and defined course and natural channel down Dixon Gulch to the intake and thence into the pipe line and the precipitating tanks. If it be granted for the moment that the solutions are not water, we are unable to see how that fact can help the plaintiff. They are still fluid, possessed of the same inherent characteristic that

water has to wander hither and yon throughout the earth; and therefore they are of that class of things in which one may have only a temporary, transient, usufructuary property. Furthermore, if they are not waters within the definition to which the law of water applies, we are not informed, and we do not know, what law does apply to them, unless it be the law which applies to all property of the fluid or liquid type, which is that you own it only while the thing is in your land or in your actual possession and under your control. But, aside from all this, it is too late now for this court to hold that the solutions are not water and hence not to be ruled by the law pertaining to the ownership of water. The plaintiff seeks to condemn tract D as a way over which water is to pass; and this court held in the case of *Utah Copper* v. *Montana-Bingham Consol. Min. Co.*, which has been referred to in another connection, that the same kind of solutions originating in another of plaintiffs dumps are water and are to be ruled by the law pertaining to water. Nor do we see how it can help the plaintiff's case to say that the waters or solutions follow a known and defined course in passing from plaintiff's land across tract D to the intake on tract C, the known and defined course being Dixon Gulch. There is nothing peculiar about Dixon Gulch in its natural state. It is just like thousands of gulches which appear upon every hand in all mountainous countries, its sides and bed in places being covered with earth, gravel, rocks, and broken-down material and in other places the ledges upon its sides and the bedrock being exposed; and in its present state, where tract D lies across the gulch, it is completely filled from crest to crest with the materials of which the railroad fill is composed, which are similar to the materials in the dump. There is no stream flowing in that gulch either upon or beneath the surface. The waters do not move with a current, as flowing waters do, but in the manner usually referred to as by seeping and percolating, except the so-called Hayes Spring waters, where they issue out of the toe of the fill, and the drain tunnel waters with which we are

not concerned. This is so manifest that counsel for plaintiff frequently use those very words in describing the manner of progression of the waters across tract D. Therefore the law pertaining to the right to the use of water flowing in streams does not apply to this situation; and so it can make no difference that the waters find their way across tract D from the west toward the east and between the walls of Dixon Gulch.

It is argued that the copper waters or solutions do not seep or percolate through the defendant's land at all, but through the property of the Bingham & Garfield Railway Company, which owns an easement for a right of way for railroad purposes over and across tract D; and hence, even by the law upon which defendant stands, they do not belong to defendant but to the railway company after they enter tract D; from which counsel would have us conclude that defendant has no right to capture the copper waters or solutions therein. The following cases are cited to show that the railway company has the exclusive possession of tract D: *Hopkins* v. *Chicago, St. P., M. & O. Ry. Co.*, 76 Minn. 70, 78 N. W. 969; *Bingham & Garfield Ry. Co.* v. *North Utah Min. Co.*, 49 Utah 125, 162 P. 65. If that position is sound, then we are at a loss to understand why plaintiff should have brought this action against the defendant. But, aside from that, the position is not sound, because the only interest which the railroad company has in the ground is an easement for a right of way to be used for railroad purposes. That is all that was conveyed to the railroad company by the predecessors of the defendant or taken by the company from them by condemnation; and hence everything else in, upon, or pertaining to the land, including the minerals and waters therein, was retained by defendant's predecessors and has been succeeded to by defendant. The railroad company has the right to use the land for any and all railroad purposes which it may desire, and, perhaps, to remove the fill, if it should be found necessary or desirable

to remove it for railroad purposes. But the trial court held, and we think correctly, that the fill has become a part of the realty, and hence belongs to the defendant, subject to the rights of the railway company as above stated. Therefore the defendant, and not the railway company, has the right to capture the vagrant waters therein, if it can do so without interfering with the railway company's use of the land. In this connection defendant cites: 21 A. L. R., note beginning on page 1131; *Eldorado, M. & S. W. R. Co.* v. *Sims*, 228 Ill. 9, 81 N. E. 782; *Southern Pac. R. Co.* v. *San Francisco Sav. Union*, 146 Cal. 290, 79 P. 961, 70 L. R. A. 221, 106 Am. St. Rep. 36, 2 Ann. Cas. 962; *Smith* v. *Holloway*, 124 Ind. 329, 24 N. E. 886; *Consumers' Gas. Tr. Co.* v. *American Plate Glass Co.*, 162 Ind. 393, 68 N. E. 1020; *Kansas Central R. Co.* v. *Allen*, 22 Kan. 285, 31 Am. Rep. 190; *Shinkle* v. *Meek*, 69 Kan. 368, 76 P. 837; *Northern Pac. & M. Ry. Co.* v. *Forbis*, 15 Mont. 452, 39 P. 571, 48 Am. St. Rep. 692; 45 L. R. A. (N. S.), note beginning on page 796; *Webster Lumber Co.* v. *Keystone L. & M. Co.*, 51 W. Va. 545, 42 S. E. 632, 66 L. R. A. 33, and note; *East Tenn., V. & G. Ry. Co.* v. *Telford's Executors*, 89 Tenn. 293, 14 S. W. 776, 10 L. R. A. 855; *McLemore* v. *Charleston & M. R. Co.*, 111 Tenn, 639, 69 S. W. 338; *East Alabama R. Co.* v. *Doe*, 114 U. S. 340, 5 S. Ct. 869, 29 L. Ed. 136; *Robinson* v. *Missisquoi R. Co.*, 59 Vt. 426, 10 A. 522; *Uhl* v. *Ohio River R. Co.*, 51 W. Va. 106, 41 S. E. 340; *Lockwood* v. *Ohio River R. Co.*, 43 C. C. A. 202, 103 F. 243; *Missouri, K. & T. R. Co.* v. *Anderson*, 36 Tex. Civ. App. 121, 81 S. W. 781; *Giesy* v. *Cincinnati, W. & Z. R. Co.*, 4 Ohio St. 308; 22 R. C. L. 847; and others.

It is said that a liquid or artificial increment artificially produced and added to a natural stream or introduced into a natural channel, by the labor of man without intent to abandon, belongs to the man whose labor produced it or brought it there when naturally it would not have existed there. Such liquid increment may be taken out of the natural stream or channel by its owner and may be recaptured

and reclaimed by him, at such point on the natural channel as may best serve the owner's purpose. Wiel on Water Rights in the Western States (3d Ed.) vol. 1, p. 38. The copper solutions are not water within the definition about which has been evolved the law of waters and water rights. They are solely the artificial product of plaintiff's industry, but for which they would not exist in Dixon Gulch. Any attempt to apply to this chemical so artificially produced the law of subterranean or surface waters finds support only in one common attribute, namely, that both are liquids, but that is wholly insufficient upon which to erect a theory by which to divert from the title the one by whose investment, industry, and expenditures the solutions were produced. The plaintiff has never intentionally abandoned the solutions; and cites Wiel on Water Rights in the Western States (3d Ed.) vol. 1, p. 41, wherein it is stated that "the intention not to abandon the water turns the stream channel into a mere means of conveyance." Also 23 L. R. A. (N. S.) 1065, that:

"It seems to be the universal rule that where a person by his own exertions increases the available supply of water in a stream,—that is, adds water to a stream which would not otherwise have flowed there,—he, as against other appropriators, has the right to appropriate and use such water to the extent of the increase, whether such water is obtained from underground sources or from other watersheds."

Also Laws of Utah 1921, c. 72, p. 189; *Hoffman* v. *Stone*, 7 Cal. 46; *Miller* v. *Wheeler*, 54 Wash. 429, 103 P. 641, 23 L. R. A. (N. S.) 1065; *Herriman Irr. Co.* v. *Butterfield Min. & Mill. Co.*, 19 Utah 453, 57 P. 537, 51 L. R. A. 930; Lewis on Eminent Domain (3d Ed.) vol. 1, p. 153; *Lower Tule River Ditch Co.* v. *Angiola Water Co.*, 149 Cal. 496, 86 P. 1081; *Platte Valley Irr. Co.* v. *Buckers Irr., Min. & Imp. Co.*, 25 Colo. 77, 53 P. 334. There are many reasons why the foregoing cannot be applied to this case so as to sustain plaintiff's asserted right to take defendant's land. The solutions are water, as we have pointed out, or, at any rate, an

unstable liquid the title to which can be held only in the way that one may hold title to water. There is no stream in Dixon Gulch to which plaintiff had added any water; all the water in Dixon Gulch, at the place with which we are concerned, is from the rain and snow which fall upon the watershed of the gulch; and plaintiff has not put one drop of water in that gulch. Although plaintiff has not intended to abandon the waters in the dump, it has done nothing whatever to reduce them to its possession or control while they are in plaintiff's land, or to prevent their escape therefrom; but has suffered and permitted them to escape from plaintiff's land in the manner which we have many times related. The owner of a gallon of gasoline in a can may have ever so strong an intention not to abandon his property in the liquid; but, if he leaves the can sitting in the sunshine with the lid off, the gasoline will evaporate into the atmosphere and he will lose his property in spite of his intention. So it is with water or any other unstable substance in the ground. If the owner suffers or permits it to leave his premises, or to get out from under his control, he will lose his property in it, and the intention has nothing to do with the matter. Finally, as we have stated in another connection, the laws pertaining to the appropriation of water rights have nothing to do with the facts in this case, and so we find nothing in the cases cited that we can use in any manner to sustain the right which plaintiff claims.

It is said that plaintiff seeks to condemn merely an easement to conduct across tract D into plaintiff's intake on tract C a part of the copper solutions originating in and flowing from plaintiff's dumps in Dixon Gulch, of both which dump and solutions plaintiff is the owner. By the exercise of the easement condemned, only such solutions will be intercepted or diverted. There are not now, nor were there at any other time, any other copper waters or solutions arising upon or flowing or existing within either tracts C or D. The main trouble with the foregoing statement is in the implication that plaintiff will conduct the solutions across tract D. The

plaintiff will do nothing of the kind. The only thing that plaintiff has done or purposes to do, as a matter of fact, is to dump the ore in the gulch and then go down upon defendant's ground at tract C and collect the waters. Nature does the rest. It is just about as accurate a description of what the plaintiff actually does to assert that plaintiff conducts the water from the ocean to the dump in the clouds as it is to say that plaintiff conducts the waters across tract D. It cannot be said with any fair degree of accuracy that plaintiff will use tract D as an easement for a right of way over which to conduct the waters; for both words, use, and conduct imply some action on the part of plaintiff. In this case there is no action, only the intention to enjoy the benefits of ownership of defendant's land, so far as tract D is concerned, which, it so happens, is being enriched by percolations from the plaintiff's lands above.

There are many other points raised and discussed in the briefs, some of them at great length, but the foregoing are all that seem to go to the main question to be decided. The others are for the most part but branches upon the tree which fall with the trunk and need no particular mention.

All that remains to be done is to dispose of the assignments relative to the judgment for costs in the lower court. The judgment provides that defendant pay the costs. Both sides filed cost bills, but the plaintiff makes no claim for the fees which it paid for filing the complaint and for service of the summons; those costs which must be paid in all civil cases. Article 1, § 22, of the Constitution of this state, reads: "Private property shall not be taken or damaged for public use without just compensation." Comp. Laws Utah 1917, § 7347, reads: "Costs may be allowed or not, and if allowed, may be apportioned between the parties on the same or adverse sides, in the discretion of the court." There is a question raised whether a judgment which requires a defendant in a condemnation action to pay the costs of the proceeding violates his right, guaranteed by the Constitution, to just compensation. It is an open question in this state.

But we feel that it is not necessary for us to decide it in this case, because the judgment will have to be reversed, for the reasons which we have stated, which almost as a matter of course, as a usual thing, require that the losing side pay the costs of the first trial and of the appeal. So for that reason we reserve an expression of opinion upon this question. As counsel have been diligent, however, in collecting and citing the authorities upon the subject, we list them here with the thought that they will be found a valuable aid to court and counsel in some future case.

Counsel for plaintiff cites: *Haver* v. *Matonock*, 75 Colo. 301, 225 P. 834; *Schneider* v. *Schneider*, 36 Colo. 518, 86 P. 347; *Public Service Co.* v. *Loveland*, 79 Colo. 216, 245 P. 493; *Truckee River Gen. Elec. Co.* v. *Durham*, 38 Nev. 311, 149 P. 61; *In re Cedar Rapids*, 85 Iowa 39, 51 N. W. 1142; *Mercer County* v. *Wolff*, 237 Ill. 74, 86 N. E. 708; *Chicago* v. *Sanitary Dist.*, 272 Ill. 37, 111 N. E. 491; *City of Dallas* v. *Hallock*, 44 Or. 246, 75 P. 204; *State* v. *Superior Court*, 42 Wash. 521, 85 P. 256; *Tenn. Coal, Iron & R. Co.* v. *Birmingham So. Ry. Co.*, 128 Ala. 526, 29 So. 455; *City of Santa Ana* v. *Brunner*, 132 Cal. 234, 64 P. 287; *Richland School, etc.*, v. *Overmyer*, 164 Ind. 382, 73 N. E. 811; *Kansas, etc., Ry. Co.* v. *Northwestern Coal & Min. Co.*, 161 Mo. 288, 61 S. W. 684, 51 L. R. A. 936, 84 Am. St. Rep. 717; *Caretta Ry. Co.* v. *Virginia-Pocahontas Coal Co.*, 62 W. Va. 185, 57 S. E. 401; *In the Matter of Cortland, etc., R. Co.*, 98 N. Y. 336; *In re New York, West Shore & B. Ry. Co., etc.*, 94 N. Y. 287; *City of Oakland* v. *Pacific Coast Lumber & Mill Co.*, 171 Cal. 392, 153 P. 705, motion denied 172 Cal. 332, 156 P. 468, Ann. Cas. 1917E, 259; *Town of Redmond* v. *Perrigo*, 84 Wash. 407, 146 P. 838.

The defendant cites: California Code of Civ. Proc. § 1255; *San Diego L. & T. Co.* v. *Neale*, 88 Cal. 50, 25 P. 977, 11 L. R. A. 604; *City & County of San Francisco* v. *Collins*, 98 Cal. 259, 33 P. 56; *Los Angeles, P. & G. Ry. Co.* v. *Rumpp*, 104 Cal. 20, 37 P. 859; *Alameda County* v. *Crocker*, 125 Cal. 101, 57 P. 766; *San Joaquin & Kings River Canal & Irr.*

*Co.* v. *Stevinson,* 165 Cal. 540, 132 P. 1021; *Oakland City* v. *Pacific Coast L. & M. Co.* 172 Cal. 332, 156 P. 468, Ann. Cas. 1917E, 259; *Yolo Water & Power Co.* v. *Edmunds,* 188 Cal. 344, 205 P. 445; *Madera County* v. *Raymond Granite Co.,* 139 Cal. 128, 72 P. 915, 989; *Alameda City* v. *Cohen,* 133 Cal. 5, 65 P. 127; 10 R. C. L. 193; 10 Cal. Jur., p. 432; *Bassett* v. *Swenson,* 51 Idaho 256, 5 P. (2d) 722; Nichols Applied Evidence, 2:1115; ibid., 2:1116; Nichols on Eminent Domain, p. 1082; *Ketchum Coal Co.* v. *Dist. Court,* 48 Utah 342, 159 P. 737, 4 A. L. R. 619; 10 Cal. Jur., p. 303, §19, Title, Eminent Domain; *Union Pac. R. Co.* v. *Colorado Postal Tel. Cable Co.,* 30 Colo. 133, 69 P. 564, 97 Am. St. Rep. 106; *Sand Creek L. Irr. Co.* v. *Davis,* 17 Colo. 326, 29 P. 742; *Lavelle* v. *Town of Julesburg,* 49 Colo. 290, 112 P. 774; *Denver Power & Irr. Co.* v. *Denver & R. G. R. Co.,* 30 Colo. 204, 69 P. 568, 60 L. R. A. 383; *In re Lima & H. F. Ry. Co.,* 68 Hun 252, 22 N. Y. S. 967; *Buffalo, B. & L. R. Co.* v. *New York, L. E. & W. R. Co. et al.,* 72 Hun 583, 25 N. Y. S. 265; *Hornellsville Elec. Ry. Co.* v. *N. Y., L. E. & W. R. Co.,* 83 Hun 407, 31 N. Y. S. 745; *In re New York, West Shore & B. Ry. Co.,* 94 N. Y. 287; *State* v. *Superior Court of Walla Walla County,* 167 Wash. 334, 9 P. (2d) 70; *Keller* v. *Miller,* 63 Colo. 304, 165 P. 774.

Since the plaintiff has no legal right to take tracts C and D by these proceedings, the judgment will have to be reversed as to them. But the plaintiff may nevertheless desire to take the other tracts which are described in the complaint, and its right to do so is not seriously controverted by the defendant. The damages to which the defendant is entitled for the several tracts which plaintiff may desire to take have not been separately ascertained or determined, and cannot be determined upon this record. Because of this, the judgment will have to be reversed in its entirety and the cause remanded for a new trial, with directions to the lower court to dismiss the action as to tracts C and D and to proceed to determine the damages to which the defendant is entitled by reason of the taking and the severance of the

several other tracts; the parties being given leave to amend their pleadings if they desire to do so, as they may be advised. The plaintiff should be required to pay the costs of the first trial and of the appeal. Such is the order.

FOLLAND and EPHRAIM HANSON, JJ., concur.

MOFFAT, J., did not participate herein.

STRAUP, Chief Justice.

I concur. The chief propositions or ultimate facts necessary to the decision may thus briefly be stated: The plaintiff's operation of its mine is conducted or carried on by what is called an open-cut method. In the course of such operation it for years removed, and continues to remove, large quantities of earth rock, and other material carrying a small percentage of copper. Such material was dumped, and is continued to be dumped, on lands of the plaintiff near its mining operations. It is inferable that such material was so dumped, at least originally, as waste, with no thought of treatment to extract therefrom whatever small quantities of copper may be contained there. The plaintiff, of course, owned the dump, and had the right to remove it or treat such material if it found it profitable to do so, or otherwise to use or dispose of it as it desired.

For some years rain and snow fell on the dump, the waters of which seeped and percolated through it and thereby became impregnated with copper in solution in sufficient quantities to precipitate it at a profit. It is admitted that the waters, so long as they remained in the dump, or on the lands of the plaintiff, were and are the property of the plaintiff, and that it had the right to there collect the waters, and by means of pipe lines, flumes, or ditches to convey them to tanks or other structures where the copper in solution could be precipitated, and for such purpose the plaintiff had the right to condemn easements and rights of way over lands of another. It also is admitted, at least it is not dis-

puted, that, when the waters so seeping and percolating in and through the dump leave it through natural causes and seep and percolate in and through the soil and earth of adjoining lands of another, such waters, though they carry copper in solution, are lost to the plaintiff, and become a part and parcel of the soil and earth of the lands of such other, and that in such case the plaintiff may not follow or reclaim such waters so found seeping and percolating in the lands of such other. All that I think was involved and decided in the case of *Utah Copper Co.* v. *Montana-Bingham' Consol. Min. Co.*, 69 Utah 423, 255 P. 672.

That such waters, after they so leave the dump, seep and percolate in or through the soil and earth of a gulch of another, or seep and percolate through lands of such other and into or through the soil and earth of a gulch owned and possessed by him, cannot, in my opinion, make any difference. In fact, the contrary is not seriously contended. Hence this action, not to condemn an easement or right of way over the lands of the defendants to lay pipe lines or to construct flumes or ditches to carry the waters from the dump to precipitating tanks, but to condemn the lands themselves in and through which such waters are found seeping and percolating and by such means to enable the plaintiff to become the owner of and to reclaim such waters so lost to it and found seeping and percolating in lands belonging to the defendants. In other words, the primary purpose of the condemnation is not to acquire lands for mining purposes, but to acquire or retain title to or the right to claim and possess waters lost to the plaintiff and seeping and percolating in such lands so sought to be condemned, after such waters by seepage and percolation have left the dump. As well say one may condemn lands of another to acquire title to or the right to use waters percolating therein, or to condemn lands of another to get his ore whether in solution or in a nonliquid state. In either event, the proposition involves the mere taking of property of another, and that too without compen-

sation. The damages here awarded the defendants were only $500, the found value of the lands themselves, without any compensation whatever for the value of any waters seeping and percolating in such lands. No claim is made that the condemned lands are necessary to operate plaintiff's mine or that the lands are to be used in connection therewith. The condemnation of the lands is not sought even for dumping purposes or for treating the ore in the dump. What is claimed by the plaintiff is that the waters from rain and snow falling on the dump and percolating and seeping through it and becoming impregnated with copper in solution cannot without considerable expense be collected at or in the dump and by means of pipe lines, flumes, or ditches carried to the precipitating tanks of the plaintiff, or the waters from natural causes through percolation prevented from leaving the dump and percolating through the adjoining lands of the defendants, hence the condemnation of the lands as a sort of conduit by percolation to carry the waters along or through the gulch to the bottom thereof where the waters on the defendants' lands rise to the surface from whence it may by the plaintiff be diverted and by means of pipe lines or otherwise carried to its precipitating tanks on lands of its own. Thus the plaintiff in effect asserts that such gulch on defendants' lands within the meaning of the Eminent Domain Act (Comp. Laws 1917, § 7330 et seq.) may be regarded as a sort of natural aqueduct, flume, ditch, or canal, and thus subject to condemnation, by seepage and percolation to carry the waters, after they have left the dump, to the bottom of the gulch where they rise to the surface. However broadly the eminent domain statute may be considered, I do not see how the proposition contended for can be brought within the statute. To call the gulch a canal or ditch or aqueduct within the language of the statute is, in my opinion, to give it an unwarranted meaning. About as well within the meaning of the statute may a dry canyon be called a ditch or canal. To say that, when the plaintiff is given condemnation of the lands, and, in effect, title in fee

thereto to bedrock, such grant carries with it ownership of the waters percolating in such lands and everything else embraced therein, except as expressly reserved, and thereby the plaintiff becomes the owner of such percolating waters, is but to beg the question as to the right to condemn the lands as and for a mere conduit to carry the waters by seepage and percolation from the dump to the precipitating tanks.

I thus concur in the reversal of the judgment.

ELIAS HANSEN, Justice (dissenting).

In my opinion the judgment of the court below on the main issue, viz., the right of plaintiff to condemn the property in question, should be affirmed. There is merit in appellants' claim that all of the costs in the trial court should not have been taxed against them, but, in light of the fact that my associates are of the opinion that the judgment of condemnation should be reversed, I shall confine my remarks to the main question. I concur in the view expressed in the prevailing opinion that the two tracts of land referred to as C and D are subject to condemnation for mining purposes within the meaning of R. S. Utah 1933, title 104, c. 61. Even though it should be held that Dixon Gulch is neither a canal, ditch nor aqueduct within the meaning of the statute, it is clearly a dumping place when used for that purpose within the meaning of R. S. Utah 1933, 104-61-1, subd. 6. Had plaintiff company sought to condemn tracts C and D for a dumping place for its ores, it could not be successfully maintained that such proposed use is not a public use within the meaning of the statute. By its action plaintiff company in effect seeks the right to dump its ores, in the form of a copper solution, onto or into the land sought to be condemned, and the further right to reclaim its ore after it has passed over or through the condemned land. Much is said in the briefs of counsel about the law with respect to percolating water. It seems to be defendants' position that percolating

water is not a subject of condemnation. If, as is urged by them, percolating water is a part of the soil and belongs to him who owns the soil, it necessarily follows that, when the soil is condemned, so likewise is the percolating water therein condemned. To hold that percolating water cannot be condemned would, in effect, be to hold the soil itself cannot be condemned. Whether the condemner seeks merely a right of way over the land of another or a fee-simple title, the result of the condemnation, in many instances, deprives the owner of the condemned property not only of the soil but of the percolating water therein.

Under our statute a condemner may, when necessary to condemn, take "a fee simple, when taken for public buildings, for reservoirs and dams and permanent flooding occasioned thereby, or for an outlet for a flow, or a place for the deposit of debris or tailings of a mine, mill, smelter or other place for the reduction of ores; provided, that where surface ground is underlaid with minerals, coal or other deposits sufficiently valuable to justify extraction, only a perpetual easement may be taken over the surface ground over such deposits." R. S. Utah 1933, 104-61-2. In this case the defendants claim the property sought to be condemned contains valuable minerals. Accordingly the court below, by the judgment appealed from, limited plaintiff's right to an easement and reserved to the defendants the right to mine any ores that may be found in or upon the property in question. The easement granted plaintiff by the judgment extends to the rockbed of Dixon Gulch. Apparently appellants' attack upon the judgment is not bottomed so much upon the claim that it is greater in extent than necessary, but upon the claim that they, and not the plaintiff, are entitled to the copper solution as soon as it escapes in their land from that of plaintiff. Such, as I understand it, is the view entertained by my associates. I readily concede that defendants were the owners of the copper solution which was percolating in defendants' land at the time and prior to the time that

the court below made its order granting plaintiff the right to occupy the land. But it by no means follows that defendants are entitled to the copper solution which percolated through plaintiff's dumps into the land in question after the court below entered its order granting plaintiff the right of occupancy. By granting plaintiff leave to occupy the land for the purpose sought by the condemnation proceedings, the possession, not only of the land but also the copper solution which thereafter percolated through such land, was in the plaintiff. It would be sheer mockery to permit plaintiff to condemn tracts C and D and then deny to it the right to use the land so condemned for the very purpose sought by the condemnation proceedings. Defendants do not claim that they have any vested interests in the copper so long as it remains in plaintiff's dump, nor do they claim that plaintiff is without right under the law of this state to condemn a right of way across tracts C and D for the purpose of transporting its copper from its dumps to its tanks where the copper is precipitated. If either of such claims were made, it could not be successfully maintained. The copper in plaintiff's dump is the product of its industry. In this state a use of property for mining purposes is made a public use, and the right of eminent domain is granted to those engaged in mining. If, therefore, tracts C and D or so much thereof as lie above bedrock are reasonably necessary for plaintiff's use, the judgment of condemnation should be affirmed, otherwise not. It is urged by defendants that plaintiff may save the copper in its dump by a means other than that which it plans to use. It is suggested that a cement retaining wall may be constructed on bedrock around the toe of plaintiff's dump for the purpose of collecting the copper solution which comes out of the dump, and that, when the copper solution is so collected, it may be transported over defendants' land by means of a pipe to plaintiff's settling tanks. Some evidence was offered at the trial concerning the feasibility of plaintiff using that method of getting its copper from its dump to its precipitating tanks. The evi-

dence, however, touching that question is far from satisfactory, especially is that so in the light of the fact that plaintiff is the owner of about two-thirds of the copper which is contained in the fill which was constructed across Dixon Gulch by the Bingham & Garfield Railway Company. There is no evidence tending to show that it is practicable for plaintiff company to construct an impervious cement wall on bedrock in the railroad fill so that the copper solution coming from plaintiff's dump, and from the two-thirds of the railroad fill owned by plaintiff, may be collected above such a wall and thence diverted into a pipe and transported to plaintiff's precipitating tanks. From the very nature of such a venture, the probable cost thereof, and the likelihood of its causing injury to the railroad track over the fill, plaintiff should not be denied the right to condemn the property in question upon such a pretext. When the right to condemn property for public use is established, the nature and extent of the right is largely a matter for the determination of the condemner. It is earnestly urged on behalf of defendants, and in the views expressed in the prevailing opinion, that, unless plaintiff reduces the copper solution into its actual possession and control before it leaves its dump or its part of the railroad fill, plaintiff forfeits its right thereto, and the ownership thereof vests in the defendants as soon as it enters their premises. I am unable to agree with such doctrine. I repeat what I have already said, if plaintiff condemns tracts C and D to bedrock, which I think they should be permitted to do, then, and in such case, the constructive possession of the copper solution percolating through the soil when condemned would be in plaintiff. I know of no principle of law which would give to the defendants any right to the copper solution which is the product of plaintiff's industry or which is percolating in solution through soil which plaintiff has condemned, nor do I know of any sound basis in either logic or law why constructive possession of property or a property right may not prevent a forfeiture of such property or property right as well as may

actual possession thereof. If plaintiff were to remove the loose material from the bottom of Dixon Gulch so that the copper solution would course down the gulch along bedrock, defendants seem to concede that they would be without right to the copper solution. To my mind the distinction is without merit. The burden cast upon the land in tracts C and D would be as great, if not greater, if the copper solution were permitted to flow on bedrock in an open cut down Dixon Gulch instead of percolating down the gulch through the soil in its natural state. If plaintiff may retain its right to the copper solution by permitting it to course down Dixon Gulch through an open artificial cut, it should not be denied that right merely because the cut is a natural one nor because loose rock and other material are superimposed upon the bedrock of the gulch. After all, whether the copper solution flows over the soil or through the soil above bedrock down Dixon Gulch, the nature of plaintiff's possession thereof during the time it is so flowing is substantially the same. To require plaintiff to construct impervious walls on bedrock at the toe of its dump, or in the railroad fill, to collect the copper solution, or to require it to excavate an open cut to bedrock down Dixon Gulch, would in no way, so far as is made to appear, lessen the damage done to or the burden cast upon tracts C and D. Such a requirement would cast upon the plaintiff a heavy, if not an insurmountable, financial outlay without any apparent benefit to the defendants. The purpose sought to be accomplished by the law of eminent domain is to avoid such results.

Appellants claim that their position is supported by the case of *Utah Copper Co.* v. *Montana-Bingham Consol. M. Co.*, 69 Utah 423, 255 P. 672, 674. There is nothing decided or said in that case, as I read it, which precludes the plaintiff in the instant case from maintaining the judgment of condemnation here sought to be reversed. In that case plaintiff was attempting to condemn an easement from its dump over the surface of defendant's land for the purpose of collecting

the copper solution which came from plaintiff's dump. The trial court held that plaintiff was entitled to maintain its action in condemnation. The right of plaintiff to condemn was by this court affirmed. Appellants seem to place considerable reliance upon the following language used by this court in that case:

"It may be conceded that the waters, though they carry copper in solution picked up from the dump as they seep through it, after they were suffered and permitted to flow out of the dump and seep and percolate through soil and earth on the claim or claims of the defendant not conveyed to the plaintiff became a part of such soil and earth and the property of the defendant, and thus lost to the plaintiff."

I am unable to see wherein the language just quoted is in any sense controlling here. In this case it may be conceded that the copper solution which escaped from plaintiff's dump prior to the time of the entering of the order permitting plaintiff to occupy the premises sought to be condemned was lost to the plaintiff. If, however, it be conceded, as I think it must, that plaintiff may condemn the property here involved, then the copper solution ceased to escape from plaintiff's land into those of the defendants when the property was condemned. In the former case the plaintiff sought merely a surface easement, while here it seeks an easement to bedrock, but in the light of our statute which permits, if necessary, the condemnation of a fee-simple title, such distinction is by no means controlling. If a fee-simple title may, when necessary, be condemned, it follows that any right less than a fee-simple title may likewise be condemned.

As already indicated, about one-third of the railroad fill of the Bingham & Garfield Railway Company is on land which is owned by defendants subject to the easement of the railway company. From such fact the trial court concluded that the portion of the railway fill which was on defendants' land belonged to them. No error is assigned because of such conclusion. The material in the railway fill is similar in

copper content to that in plaintiff's dump. It is urged by defendants that, if the judgment of condemnation appealed from is affirmed, they will be deprived of the copper which comes from that part of the railway fill which is on their land and which belong to them. Such results do not follow an affirmance of the judgment. It is provided by R. S. Utah 1933, 104-61-3, subd. 5, that:

"All rights of way for any and all purposes mentioned in section 104-61-1, * * * shall be * * * subject to a limited use in common with the owners thereof. * * *"

The fact that plaintiff may use Dixon Gulch as a means to convey its copper solution to its precipitating tanks does not preclude defendants from using the gulch for a like purpose. While the copper solution belonging to plaintiff, as well as that belonging to defendants, would necessarily be commingled while flowing down Dixon Gulch, it would apparently be an easy matter to divide the solutions equitably after they had passed through tracts C and D. If, as appears, the material in plaintiff's dump and the railway fill contain substantially the same percentage of copper, it would seem to follow that the copper solution would be owned by the parties in proportion to the amount of copper-bearing materials owned by each of the parties. However, this action was not brought for the purpose of determining the relative rights of the parties to the copper solution which finds its way down Dixon Gulch, and therefore the relative rights of the parties to the copper solution are not before us for adjudication. The judgment, in so far as it grants plaintiff the right to condemn the property in question, should be affirmed.